Robert S. Clark (4015) (rclark@parrbrown.com)
Chad S. Pehrson (12622) (cpehrson@parrbrown.com)
PARR BROWN GEE & LOVELESS, P.C.
185 South State Street, Suite 800
Salt Lake City, Utah  84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

Attorneys for Brigham Young University

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BEUS GILBERT PLLC,<br>Plaintiff,<br><br>vs.<br><br>BRIGHAM YOUNG UNIVERSITY, WEILIN XIE, DANIEL L. SIMMONS,<br>Defendants. | **ANSWER AND CROSS-CLAIM OF BRIGHAM YOUNG UNIVERSITY**<br><br>Case No. 2:12-cv-00970-TS<br><br>Honorable Robert J. Shelby |

Defendant Brigham Young University ("BYU") through its undersigned counsel, hereby answers the Interpleader Complaint filed in this matter by Plaintiff Beus Gilbert PLLC, and responds to the specifically numbered paragraphs of the Complaint as follows, specifically reserving the right to amend and/or supplement its responses, or to assert additional affirmative claims, as circumstances may warrant.

1. Admit.

2. Based on information and belief, admit.

3. Based on information and belief, admit.

4. Admit.

5. Admit.

6.     Admit.

7.     Admit.

8.     Admit that BYU and Dr. Simmons discussed division of settlement proceeds, but allege that the division or sharing was also discussed with Dr. Xie.  BYU understood that Dr. Simmons and Dr. Xie had both agreed to the division discussed among them, but when a written agreement was prepared and circulated for signature Dr. Xie did not sign.

9.     Admit.  BYU affirmatively alleges that it directed Beus Gilbert to disburse funds based on its then-understanding that Dr. Simmons and Dr. Xie had both agreed to the division discussed among them.

10.     Admit that Dr. Xie has failed to sign an agreement that would allow distribution of any funds to him.  As to the remainder of the allegations in Paragraph 10, for lack of knowledge or information sufficient to form a belief as to the truth thereof, deny.

11.     Paragraph 11 does not include any allegations asserted against BYU, and therefore no response is required, but to the extent a response may be appropriate, on information and belief BYU admits the allegations of Paragraph 11. BYU affirmatively alleges BYU has an interest in proper disposition of the funds currently in the Court's possession.  BYU further affirmatively alleges that the $1,000,000 is subject to internal administrative proceedings to be managed by BYU and that should involve both of the individual Defendants in this Action.

12.     BYU admits that no further court proceedings should be instituted, and asserts that the dispute resolution process described below should be completed before a final judgment is entered by this Court.

13.     Paragraph 13 does not include any allegations asserted against BYU, and therefore no response is required.

To the extent any response is required to Plaintiff's prayer for relief, BYU affirmatively responds that BYU has rights and duties with respect to the funds on deposit with this Court, and an interest in and right to protect the integrity and enforceability of its internal policies, as explained below.

## CROSS-CLAIM FOR DECLARATORY RELIEF

Defendant BYU asserts that it has an interest in and claim to the interpleaded fund, and a right to preserve the integrity of its internal policies, and, in furtherance thereof, asserts the following Cross-Claim against Defendant Daniel L. Simmons and Defendant Weilin Xie.

14.     This Cross-Claim relates to the same factual matters asserted in the Complaint filed in this action, including, without limitation, the funds on deposit with this Court.

15.     Thus, this Court has jurisdiction under 28 U.S.C. §§ 1335 and 1367 and Rules 13 and 22 of the Federal Rules of Civil Procedure.

16.     This Cross-Claim is also properly before the Court pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure because it involves an actual controversy among the Parties and a request that the Court declare the rights and other legal relations of the Parties hereto.

17.     While employed at BYU, Defendants Simmons and Xie participated in research related to the Cox-2 enzyme.  In more recent years, Simmons and BYU were parties to litigation with Pfizer, Inc.  Xie gave deposition testimony during the course of that litigation.

18.     The Pfizer, Inc. lawsuit eventually resulted in the receipt of certain settlement funds by BYU.  The disposition of a portion of those settlement funds is at issue in the instant Interpleader Action.  This Cross-Claim seeks a declaration with respect to BYU's rights in connection with its internal policies, and resolution of disputes related to any and all competing claims to any portion of the settlement funds.

19.     BYU has implemented an "Intellectual Property Policy" (hereinafter, the "Policy"), which is attached hereto as Exhibit A.  The Policy "defines the rights and responsibilities of all involved" in the creation of intellectual property at BYU.  [Policy, Ex. A, at 3.]

20.     The Policy states that participants agree to disclose, transfer and assign to BYU all intellectual property rights in exchange for a percentage share of certain proceeds that flow from the relevant University intellectual property, subject to the conditions set forth in the Policy.  [Policy, Ex. A, at 15.]  The Policy sets forth that without an express agreement specifying otherwise, BYU owns title to all intellectual property developed by University personnel within the scope of their employment.  [Policy, Ex. A, at 5.]   The Policy offers a potential share of proceeds to those individuals determined to be "Developers" under the Policy. [Policy, Ex. A, at 15.]

21.     The Policy sets forth criteria under which Developer status is determined. [Policy, Ex. A, at 13-18.]   Both Simmons and Xie assert that they qualify as Developers.  The Policy contemplates that to participate in the administrative procedures which may lead to a possible distribution under the Policy, a potential Developer must assign to the University

whatever initial rights they may have had related to the relevant intellectual property.  [Policy, Ex. A, at 15.]

22.     The Policy affords Developers an opportunity to agree amongst themselves as to the appropriate formula to share the Developers' portion of the distributed revenues.  [Policy, Ex. A, at 13-14.]

23.     In the event that the Developers do not agree, the Policy sets forth dispute resolution procedures.  [Policy, Ex. A, at 20.]  The Policy contemplates that a University council will appoint a subcommittee to "investigate the dispute and make a recommendation for resolution to the associate academic vice president for research, who will make the final determination in consultation with the academic vice president." [Policy, Ex. A, at 20.]

24.     Prior to receiving a distribution under the Policy, a Developer must sign an "Income Distribution Agreement," and the distribution must be approved by specified University personnel.  [Policy, Ex. A, at 14.]

25.     The only valid claim that anyone other than BYU may have to the Interpleaded Funds is by way of satisfying the conditions set forth in the Policy.  In the absence of one or more Developers satisfying the conditions to distribution, and until the internal process set out in the Policy has been completed, BYU holds title to the Interpleaded Funds.

26.     Policy administrative procedures are not complete, and all conditions necessary to distribution of the Interpleaded Funds have not been satisfied.

27.     BYU has an ongoing material interest in ensuring the integrity and effectiveness of the Policy.

28.     In an effort to clarify whether Xie intended to reject the terms of the proposed June 13, 2012 Developer Distribution Agreement, on November 15, 2012 BYU notified Xie, through his counsel, that he could accept the agreement by signing and returning it by November 28, 2012, failing which the offer would be withdrawn.  A copy of the correspondence setting forth that notice is attached as Exhibit "B".

29.     Xie did not deliver to BYU a signed agreement by November 28, 2012 (nor at any time since then), and BYU considers the offer set forth in that proposed agreement to be rejected and withdrawn.

30.     BYU's view is that the partially signed proposed Developer Distribution Agreement is not valid or enforceable without the signature of all parties identified therein.

31.     BYU has informed Xie and Simmons (through their respective counsel) of its position in this matter both orally and in writing.  Among other communications, a letter from counsel for BYU dated January 4, 2013, (attached hereto as Exhibit "C") summarizes BYU's position with respect to the issues addressed in that letter.

32.     Based on the documents that have been filed by Xie and Simmons in this proceeding, there is a genuine controversy with respect to the status of the Parties under the Policy and their respective entitlement to distribution of the Interpleaded Funds.

33.     In addition, there is a genuine controversy with respect to the binding nature of BYU's dispute resolution process.

34.     The Parties' rights, if any, to the Interpleaded Funds should be determined pursuant to University procedures specified by the Policy.  It is not possible for this Court to replicate those procedures.

WHEREFORE, Defendant BYU respectfully requests that the Court:

    A.  Allow BYU to proceed under its Policy;

    B.  Enter an order declaring that final decisions of BYU rendered pursuant to the Policy are and will be binding on the Parties;

    C.  At the conclusion of BYU's internal dispute resolution process under the Policy, enter final judgment consistent with the decision reached by BYU under the Policy; and

    D.  Grant BYU such additional relief that the Court determines to be proper.


DATED this 1st day of February 2013.


                    PARR BROWN GEE & LOVELESS, P.C.

                    /s/ Robert S. Clark
                    Robert S. Clark
                    Chad S. Pehrson

                    Attorneys for Defendant Brigham Young University

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of February 2013, I filed the foregoing

**ANSWER AND CROSS-CLAIM OF BRIGHAM YOUNG UNIVERSITY** via the CM/ECF

system, which electronically served the following:

**Lee M. Andelin**
Beus Gilbert PLLC
701 N. 44th State
Phoenix, AZ 85008

**Marc T. Rasich**
Stoel Rives (UT)
201 S Main St.  Ste. 1100
Salt Lake City, Utah 84111-4904

**Brent Hatch and Mark James**
Hatch, James & Dodge, P.C.
10 West Broadway, Suite 400
Salt Lake City, UT  84101

**Pamela J. Naughton, Michael Murphy, and Rebecca S. Roberts**
Sheppard Mullin Richter & Hampton LLP
12275 El Camino Real, Suite 200
Sand Diego, CA  92130-2006

**Francis M. Wikstrom and Kristine E. Johnson**
Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, UT  84111

**J. Michael Hennigan, Roderick Dorman, and Allison K. Chock**
McKool Smith, P.C.
865 S. Figueoria Street, Suite 2900
Los Angeles, California 90017

_____/s Robert S. Clark_____