Robert S. Clark (4015) (rclark@parrbrown.com)
Chad S. Pehrson (12622) (cpehrson@parrbrown.com)
PARR BROWN GEE & LOVELESS
185 South State St., Suite 800
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7550

*Attorneys for Defendant Brigham Young University*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BEUS GILBERT PLLC,<br><br>Plaintiff/Stakeholder,<br><br>vs.<br><br>BRIGHAM YOUNG UNIVERSITY, WEILIN XIE, DANIEL L. SIMMONS,<br><br>Defendants/Claimants. | **BRIGHAM YOUNG UNIVERSITY'S MOTION FOR STAY PENDING COMPLETION OF INTERNAL UNIVERSITY ACADEMIC PROCEDURES AND SUPPORTING MEMORANDUM**<br><br>Case No. 2:12-cv-00970-TS<br><br>Honorable Robert J. Shelby |

Defendant/Claimant Brigham Young University ("BYU"), through counsel, hereby moves the Court to stay this Interpleader Action pending the completion of BYU's internal proceedings. These procedures are contemplated under the "Intellectual Property Policy" (hereinafter "Policy"), which governs all Claimants' underlying rights to the funds which have been deposited with the Court. BYU is presently implementing the dispute resolution process of its Policy, and anticipates final conclusion to all Policy proceedings within the next several

i

months.  This Court's determination of which Claimant is or may be entitled to the deposited funds will be more efficiently adjudicated *after* completion of the BYU procedures.  Furthermore, completion of the procedures will reduce the need for early motion practice in this Interpleader Action, and will certainly clarify and inform the factual issues in dispute.  In sum, a short stay will give best effect to the purpose underlying the interpleader device—economizing litigation while protecting the interests of all parties.  Furthermore, there is always the potential that the parties may elect to mediate or otherwise resolve this dispute, and to the extent that the other Claimants are interested in pursuing mediation, the requested brief would facilitate such efforts, which would further serve efficiency interests.

Therefore, BYU requests the Court to stay this matter, including all ongoing motion practice and deadlines, for a brief period estimated to be less than six months.  BYU requests that the order instruct the parties to refrain from other proceedings until the dispute resolution process is complete.

## RELEVANT FACTS

1.  In Early October 2012, Claimant/Defendant Weilin Xie ("Xie") filed a complaint with the Arizona Bar Association against Beus Gilbert, PLLC ("Beus Gilbert") indicating a claim against funds held by Beus Gilbert.  BYU understands that this bar complaint was dismissed following an investigation by the Arizona Bar.

2.  Shortly after the bar complaint was filed, on October 17, 2012, Plaintiff/Stakeholder Beus Gilbert filed the instant Interpleader Action., averring that it sought to avoid being exposed to double or multiple liability in relation to multiple, conflicting claims to the $1,000,000 then in its possession.  [Doc. No. 1, ¶ 11].

  3. On October 18, 2012, Beus Gilbert filed a Motion to deposit the $1,000,000 with the Court, asserting to the Court that all relevant procedural and jurisdictional grounds were satisfied.  [Doc. No. 6.]

  4. On November 6, 2012, the Court granted Beus Gilbert's Motion pursuant to 28 U.S.C. § 1335 and ordered the Court Clerk to accept deposit of the $1,000,000 (hereinafter, the "Interpleaded Funds").  [Doc. No. 7.]

  5. On November 30, 2012, Defendant/Claimant Weilin Xie (hereinafter "Xie") filed a motion for extension of time to Answer the Complaint, which Motion was granted.  [Doc. Nos. 9, 10.]

  6. On December 12, 2012, Xie and Defendant/Claimant Daniel Simmons (hereinafter "Simmons") filed a stipulated motion to extend the time to answer, which Motion was granted.  [Doc. Nos. 13, 14.]

  7. On January 7, 2013, Xie filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, supported by two affidavits.  [Doc. Nos. 15-17.]  The Motion to Dismiss, among other things, avers that "Dr. Xie intends to file a complaint as to the unauthorized release of approximately $130 million," which potential claim, by definition will directly relate to and affect each Claimant's entitlement to the Interpleaded Funds.  [Doc. No. 15, p. 6.]  Xie also avers that the instant Interpleader Action stands in the way of his putative right to choose his own forum for litigation.  [Doc. No. 15, p. 6.]

  8. On January 10, 2013, Simmons filed an Answer to the Complaint and a Cross-Claim against Co-Claimant Xie, seeking a declaratory judgment that a dispute exists regarding Xie's status as a "developer" under the Policy. [Doc. No. 24.]

9. On February 1, 2013, Defendant/Claimant BYU filed its Answer to the Complaint and Cross-Claims against both Xie and Simmons seeking a declaratory judgment as to the binding nature of the Policy and related BYU proceedings. [Doc. No. 34.]

10. While employed at BYU, Simmons and Xie participated in research related to the Cox-2 enzyme. In more recent years, Simmons and BYU were parties to litigation with Pfizer, Inc., and Xie gave deposition testimony during the course of the lawsuit. That lawsuit eventually resulted in the receipt of certain settlement funds ("Settlement Funds") by BYU. The Interpleaded Funds consist of a portion of the Settlement Funds.

11. BYU's Policy is attached hereto as Exhibit A. The Policy "defines the rights and responsibilities of all involved" in the creation of intellectual property at BYU. [Policy, Ex. A, at 3.]

12. Pursuant to the Policy, participants who agree to disclose, transfer and assign intellectual property rights become entitled to receive a share of certain proceeds that flow from the relevant University intellectual property, subject to the conditions set forth in the Policy. [Policy, Ex. A, at 15.] The Policy offers a potential share of proceeds to those individuals determined to be "Developers" under the Policy provided such individuals comply with all Policy criteria. [Policy, Ex. A, at 15.]

13. The Policy sets forth criteria under which Developer status is determined. [Policy, Ex. A, at 13-18.] Both Simmons and Xie assert that they qualify as Developers.

14. The Policy affords Developers an opportunity to agree among themselves as to the appropriate formula to share the Developers' portion of the distributed revenues. [Policy, Ex. A, at 13-14.]

15. In the event that the Developers do not agree, the Policy sets forth dispute resolution procedures.  [Policy, Ex. A, at 20.]  The Policy provides that a University council will appoint a subcommittee to "investigate the dispute and make a recommendation for resolution to the associate academic vice president for research, who will make the final determination in consultation with the academic vice president." [*Id.*]

16. Prior to receiving a distribution under the Policy, a Developer must sign an "Income Distribution Agreement," and the distribution must be approved by specified University personnel.  [Policy, Ex. A, at 14.]

17. The only valid claim that anyone other than BYU may eventually have to any of the Settlement Funds, including the Interpleaded Funds, is by way of satisfying the conditions set forth in the Policy.  In the absence of one or more Developers satisfying the conditions to distribution, BYU is entitled to all Settlement Funds, including all Interpleaded Funds.

18. Therefore, because Policy administrative procedures are not complete, and all conditions have not been satisfied, the only Defendant with a viable present claim to the Interpleaded Funds is BYU.  However, BYU acknowledges that both Xie or Simmons have made claims to the Interpleaded Funds, and anticipates that either or both are likely to satisfy the conditions and become entitled to a share of the proceeds.

19. BYU's present entitlement to the Interpleaded Funds is averred in its Answer ([Doc. No. 34]), and is further evident from the Complaint in this action, wherein Beus Gilbert alleges that it previously acted as to the Interpleaded Funds pursuant to specific direction by BYU.  [Compl. ¶¶ 9-10.]

20. BYU has an ongoing material interest in ensuring the integrity and effectiveness of the Policy.  The results of Policy procedures are binding upon all participants, including all Defendants in this Action.  Courts, when reviewing universities' decision-making processes pursuant to intellectual property policies, hold the policies to be binding and grant substantial deference to the outcomes of procedures called for under the policies.

21. Potential rights of Claimants Xie and Simmons to the Interpleaded Funds must first be determined pursuant to BYU procedures specified by the Policy.  The time from June 2012 through January 2013 was principally spent on Policy-contemplated negotiations between Xie and Simmons.  Also during this time, Xie and Simmons have requested information from BYU, which requests have been diligently attended to by BYU.

22. In addition, Simmons has asserted cross-claims, and Xie has filed documents asserting entitlement to funds, with such claims arising out of the same transaction and occurrence as the main claim in this Interpleader Action, and which claims will affect the final disposition of the Interpleaded Funds

23. Based on the documents filed by Xie and Simmons in this matter, it is clear that the only two individuals who assert that they qualify as developers under the Policy have been unable to agree on the method of calculating the allocation of funds to be distributed to developers under the Policy.  BYU understands that negotiations between Simmons and Xie are at an impasse.

24. On February 5, 2013, BYU issued a notification to both Simmons and Xie, which is attached as Exhibit B.  The notification advised Simmons and Xie that the dispute between them must be resolved pursuant to the Policy, and explained the next step in the dispute resolution

process.  BYU also set forth a timeline for upcoming dispute resolution procedures.  Final resolution is hoped to occur within several months.

25. On February 26, 2013, BYU issued an updated notification to Simmons and Xie, advising them of scheduling issues involving the Council for Faculty Development and Research ("Council"), which is the University council responsible for selecting a subcommittee charged with investigating the dispute between Simmons and Xie and providing a recommendation to the University's associate academic vice president for research.  This notification is attached as Exhibit C.

26. Craig Hart is the Associate Academic Vice President for Faculty and is co-chair of the Council.  Mr. Hart is leading the Council in its duties as to the dispute resolutions procedures, and his declaration is attached as Ex. D.

27. On March 18, 2013, the Council will be asked to appoint a subcommittee of competent professors to investigate the dispute and recommend a resolution.  [Ex. D, ¶¶ 7-8.]  All Policy procedures will move forward without undue delay.  [Ex. D, ¶ 9.]

**ARGUMENT**

The policy aim of the interpleader statute and rule is efficiency, and this Action will proceed more efficiently if it is stayed briefly to allow for the completion of the BYU proceedings. BYU has initiated the dispute resolution process required by the Policy, and anticipates moving forward without delay. [*See* Ex. B (setting forth anticipated timeline for dispute resolution procedures).] These procedures will affect and inform each Claimant's entitlement to the Interpleaded Funds at issue in this Action.

**I. This Court Has Inherent Authority and Broad Discretion to Grant a Stay.**

The District Court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681. 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997). This power is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Miller v. Basic Research LLC,* No. 07-871, 2011 WL 818150, at *3 (D. Utah March 2, 2011) (quoting *Landis v. North American Co.,* 299 U.S. 248, 254 (1936)).

Courts assess the propriety of stays in a variety of settings, but tend to look at similar factors in each setting. For instance, parties often seek stays pending the completion of other proceedings, including other litigation, arbitration, or agency proceedings. Factors considered in these cases include judicial and party economy, the potential for avoiding confusion, and undue prejudice or hardship, and the length of the stay. *E.g.*, *Gale v. Brinker Int'l Payroll Co., L.P.*, No. 09-129, 2010 WL 3835215, at * 1 (D. Utah Sep. 29, 2010)

The instant setting—a brief stay of an interpleader action to allow for completion of ongoing internal university academic proceedings—also evokes some unique considerations

1

related to the efficiency and benefits of the interpleader device.  The Third Circuit explained: "The benefits of the [interpleader] device to both the stakeholder and the claimants are substantial.  It relieves the stakeholder from determining at his peril the merits of competing claims and shields him from the prospect of multiple liability; it gives the claimant who ultimately prevails ready access to the disputed fund." *NYLife Distributors, Inc. v. Adherence Group*, 72 F.3d 371, 374 (3d Cir. 1995).  Given these overall efficiency goals, any gains in efficiency from the requested stay should be given special consideration.

Also, the Court should also consider the unique academic proceedings at issue—per long historical tradition, courts acknowledge that university academic processes and decisions enjoy substantial autonomy.  *E.g.*, *Grutter v. Bollinger,* 539 U.S. 306, 328–29 (2003) (discussing "tradition of giving a degree of deference to a university's academic decisions"); *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1984) ("When judges are asked to review the substance of a genuinely academic decision. . . .they should show great respect for the faculty's professional judgment."); *Feldman v. Ho*, 171 F.3d 494, 497 (7th Cir. 1999) ("[T]he only way to preserve academic freedom is to keep claims of academic error out of the legal maw.").  Here, the implementation of a university policy, designed and drafted to advance the educational mission of that university, is entitled to academic deference.

## II.  All Relevant Considerations Favor The Stay.

Each of the above-described factors, including considerations both universal and unique to this setting, weigh in favor of granting a brief stay.

### A. The Stay Will Promote Judicial Economy and Party Economy.

The stay will conserve both judicial and party resources, thereby accomplishing a chief goal of the interpleader statute and rule. *E.g. Hunter v. Federal Life Ins. Co.*, 111 F.2d 551, 557 (8th Cir. 1940) ("The remedy of interpleader should, of course, be a simple, speedy, efficient and economical remedy.").

Absent a stay, this Interpleader Action will involve substantial motion practice over the next few months. This motion practice will involve factual issues relating to unfinished Policy proceedings. In a few months time, this motion practice may prove to be altogether unnecessary. The upcoming BYU dispute resolution procedures will certainly narrow the issues to be resolved in this matter, and might lead to a mutually agreeable settlement of their current differences. BYU believes the prospects of this result are enhanced given the nature of the dispute resolution proceedings.

Second, the ongoing Policy proceedings will inform this dispute by crystallizing the factual record, drawing out any abiding distinctions between party positions, and simplifying the issues. *E.g. Kendall State Bank v. Fleming*, No. 12-2134, 2012 WL 3143866, at *4 (D. Kan. Aug. 1, 2012) (granting short stay because it would "promote the goals of economy of time and effort for itself, for counsel, and for litigants."). The completion of the internal BYU procedures will clarify the issues that will be presented in this Action. For instance, a dispute among the Claimants to the Interpleaded Funds appears to involve the nature of the BYU-administered Policy proceedings, including the question of whether BYU and the other Claimants substantially complied with the Policy. It would be inefficient for this Court to review these questions and their effect upon the Claimants' rights to the Interpleaded Funds *before* the

proceedings are complete. Yet at the conclusion of the dispute resolution proceedings, the Court's adjudication of entitlement to the Interpleaded Funds may proceed upon a developed, complete and closed underlying record.

Finally, as to party resources, the stay will avoid the prospect of extensive, simultaneous obligations—in front of this Court and the proceedings of the BYU dispute resolution committee. *See Amadeck v. Capital One Fin. Corp.,* No. 12-0244, 2012 WL 5472173, at *1 (W.D. Wash. Nov. 9, 2012) (finding that a brief stay would "promote the efficient resolution of this and other matters"). This prospect of simultaneous, dual-front proceedings will unnecessarily strain party resources, and may limit the efficacy and proficiency of both sets of proceedings. This issue of party resources is particularly relevant because the purpose of the interpleader device is to economize litigation.

In sum, denying the stay request would force each Claimant, the Stakeholder, and this Court to unnecessarily expend significant resources in an inefficient manner. After the short stay, these resources will be far better utilized.

**B. The Stay Will Help Avoid Confusion and Distraction.**

The issues addressed in the dispute resolution proceedings will inform and influence the principal issues relevant in this Interpleader Action. In the view of BYU, the Claimants' underlying rights to the Interpleaded Funds can be conclusively established only after the Policy proceedings are complete. [Facts ¶¶ 15-18.] The interpleader statutes themselves contemplate the potentially evolving nature of parties' claims, as Section 1335 sets forth that jurisdiction is found where "[t]wo or more adverse claimants . . . are claiming *or may* claim to be entitled to such money." 28 U.S.C. § 1335 (emphasis added).

Given this interrelatedness, if the two proceedings are actively moving forward at the exact same time, the potential exists for undesirable interference from one proceeding to the other. For instance, absent a stay the parties may seek judicial commentary on the nature of the not-yet-completed portions of the Policy proceedings. Inevitably, without a stay, either or both of Simmons and Xie may complain to the Court about the ongoing BYU procedures and aspects that somehow assertedly short one or the other. This practice would obviously impair or erode the effectiveness of BYU's procedures.

Regardless of the Court's reaction or non-reaction to potential complaints, the existence of ongoing and non-stayed motion practice in this Court will prove an unhelpful distraction and source of possible confusion. It is better for all parties to complete the BYU dispute resolution process during the requested brief stay, and *then* bring their final grievances as to procedure or substance to the Court's active attention. Therefore, the requested stay, including an order precluding unnecessary motion practice or court filings relating to the unfinished Policy proceedings, will advance the interests of all parties and this Court.

**C. The Stay Will Not Cause Any Party Undue Prejudice or Hardship.**

The stay will not cause any undue prejudice or hardship to any party. Courts sometimes find prejudice where the stay will be lengthy, where ability to gather evidence may be limited, or where evidence will be lost. *E.g. Miller v. Basic Research LLC*, No. 07-871, 2011 WL 818150, at *3 (D. Utah March 2, 2011) (denying stay while discussing effect of the "years to resolve" the other proceeding, and the commensurate risks to evidence-gathering and memories).

These concerns do not apply here, principally because the requested stay is brief. [Facts ¶ 27.] Therefore, possible prejudice as to each party is either non-existent or *de minimis*; in any event, such prejudice would be far outweighed by advantages of the stay.

### D.  The Stay Properly Balances Judicial Deference to Academic Decisions While Respecting the Stakeholder's Rights to Pursue a Federal Interpleader Action.

The best way to show deference to the pending academic decisions, while also protecting the rights of all parties, will be to allow a few months for their completion.  Per long historical practice, federal courts have treaded lightly in areas the touch upon academic decision by universities.  *E.g.*, *Widmar v. Vincent*, 454 U.S. 263, 276-77 (1981) ("Nor do we question the right of the University to make academic judgments as to how best to allocate scarce resources.").  Claimant Xie has previously asked the Court to dismiss the action in its entirety, asserting that he should be entitled to sue the Stakeholder and the other Claimants in his own chosen forum.  [Facts ¶ 7.]  This request ignores governing law which establishes that jurisdiction is appropriate.  28 U.S.C. § 1335 (stating that district courts "shall have original jurisdiction" where two or more adverse claimants of diverse citizenship "are claiming or may claim" funds which have been deposited with the Court).  Xie's request also undermines the policy aims of the interpleader device.  The interpleader statutes efficiently address concerns that often interfere with complex multi-party litigation.  *E.g.* 28 U.S.C. § 2361 (providing for nationwide service on all claimants, and allowing injunction of other court proceedings affecting the stake); 28 U.S.C. § 1397(establishing right to bring interpleader action where one or more claimant resides); *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 533, 87 S. Ct. 1199, 1205, 18 L. Ed. 2d 270 (1967) (explaining that interpleader statute's goal is to allow the stakeholder to manage multiple competing claims to a fund or property in a single proceeding);

6

*NYLife Distributors, Inc. v. The Adherence Group*, 72 F.3d 371, 382-83 (1995) (explaining purpose of interpleader statutes is in "providing an opportunity to litigants to resolve disputes" and "ensuring that procedural fencing, forum shopping or gamesmanship is not rewarded"); *Equitable Life Assurance Soc'y v. Porter-Engelhart*, 867 F.2d 79, 89 (1st Cir. 1989) (explaining that interpleader is intended to facilitate joinder into one action).

This Interpleader Action is the ideal vehicle for the most efficient, convenient, and expeditious manner for adjudicating the competing claims to the Interpleaded Funds. As part of the stay, in the further interest of efficiency and sensible adjudication, the Court should preclude all parties from undertaking motion practice or court filings relating to the unfinished Policy proceedings. This requested brief stay—which will allow the Court to retain its appropriate jurisdiction over the Interpleaded Funds while also allowing completion of the Policy proceedings—will further enhance efficiency interests for all Parties. Incidentally, this stay may also allow for the possible initiation and completion of private mediation efforts, which would further serve efficiency goals.

## CONCLUSION

Accordingly, the Court should grant Defendant/Claimant BYU's request to stay the proceedings pending the completion of internal academic proceedings, and/or the completion of possible private mediation between the other co-Claimants.

Respectfully Submitted this 11th day of March, 2013.

                Parr Brown Gee & Loveless

                By /s Robert S. Clark
                    Robert S. Clark
                    Attorneys for Defendant Brigham Young University

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of March 2013, I electronically filed the foregoing **MOTION FOR STAY PENDING COMPLETION OF INTERNAL UNIVERSITY ACADEMIC PROCEDURES AND SUPPORTING MEMORANDUM** with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

**Lee M. Andelin**
Beus Gilbert PLLC
701 N 44TH ST
Phoenix, AZ 85008

**Marc T. Rasich**
Stoel Rives
201 S MAIN ST STE 1100
Salt Lake City, UT 84111-4904

**Brent Hatch and Mark James**
Hatch, James & Dodge, P.C.
10 West Broadway, Suite 400
Salt Lake City, UT 84101

**Pamela J. Naughton, Michael Murphy, and Rebecca S. Roberts**
Sheppard Mullin Richter & Hampton LLP
12275 El Camino Real, Suite 200
Sand Diego, CA 92130-2006

**Francis M. Wikstrom and Kristine E. Johnson**
Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, UT 84111

**J. Michael Hennigan, Roderick Dorman, and Allison K. Chock**
McKool Smith, P.C.
865 S. Figueoria Street, Suite 2900
Los Angeles, California 90017

**Frederick A. Lorig**
**Joseph M. Paunovich**
**James R. Asperger**
Quinn Emanuel Urquhart & Sullivan, LLP
86 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

      /s/  Robert S. Clark