Brent O. Hatch (5715)
bhatch@hjdlaw.com
Mark F. James (5295)
mjames@hjdlaw.com
HATCH, JAMES, & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Frederick A. Lorig (Pro Hac Vice)
James R. Asperger (Pro Hac Vice)
Joseph M. Paunovich (Pro Hac Vice)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Defendant Dr. Weilin Xie

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BEUS GILBERT PLLC,<br><br>    Plaintiff,<br><br>  v.<br><br>BRIGHAM YOUNG UNIVERSITY,<br>WEILIN XIE AND DANIEL SIMMONS,<br><br>    Defendants. | **DEFENDANT DR. WEILIN XIE'S RESPONSE TO DEFENDANT BRIGHAM YOUNG UNIVERSITY'S MOTION FOR STAY PENDING COMPLETION OF INTERNAL UNIVERSITY ACADEMIC PROCEDURES**<br><br>**Case No. 2:12cv00970-RJS**<br><br>Honorable Judge Robert J. Shelby |

1

## INTRODUCTION

Defendant Brigham Young University ("BYU"), pursuant to the stay sought by its Motion, notified Defendants Dr. Weilin Xie and Dr. Daniel Simmons that: BYU prematurely distributed Developers' share of the settlement from the recently concluded patent litigation between BYU and Pfizer to Dr. Simmons; the prematurely distributed funds are to be held in trust by Dr. Simmons, and that BYU has empanelled an academic subcommittee to review the respective contributions of Defendants Dr. Xie and Dr. Simmons as Developers of the intellectual property at issue in the now settled BYU litigation against Pfizer . *See* Exhibits A, F and G, January 4, 2013, April 24, 2013, and May 7, 2013 Letters from BYU.

As stated in BYU's attached correspondence, the BYU subcommittee will determine, from an academic standpoint, what portion of the 45% Developers' share of the Pfizer settlement each of Dr. Xie and Dr. Simmons is entitled to under BYU's IP policy.  BYU acknowledged in its January 4, 2013 letter that the Developer funds (representing the 45% Developers' share of the Pfizer settlement) were prematurely distributed to Dr. Simmons and required that these funds be held in trust pending the outcome of BYU's academic review.  To date, however, Dr. Simmons has neither confirmed that he is holding the prematurely distributed funds in trust, nor returned the prematurely distributed funds to BYU, nor deposited the prematurely distributed funds into an escrow account.  Since BYU and Dr. Simmons in their answers to this interpleader action and cross-claims consented to the jurisdiction of the Court over this dispute, Dr. Xie in response to BYU's motion to stay states that he does not oppose the motion provided the Court condition the stay sought by BYU, and agreed to by Dr. Simmons (Docket No. 68), upon either the deposit of the prematurely distributed Developer funds into trust with this Court or, at the very least, upon written confirmation by Dr. Simmons that he is holding the entirety of the prematurely

Case 2:12-cv-00970-TS   Document 79   Filed 05/28/13   PageID.669   Page 3 of 10

distributed funds in a trust pending the decision of the BYU subcommittee and review by this Court, as BYU itself asked of Dr. Simmons.

Accordingly, without waiving Dr. Xie's challenge to Beus Gilbert PLLC's attempt to invoke this Court's personal jurisdiction over him as a 20 year resident of the State of California, or any other challenges to the interpleader action or the cross-claims filed by Defendants BYU and Dr. Simmons, and reserving all other rights, including Dr. Xie's right to pursue his own legal remedies in a California court, Dr. Xie responds that he does not oppose BYU's motion to stay pending completion of BYU's academic review conditioned on the deposit of all Developer funds into the trust described above and subject to the Court's continued jurisdiction to hear any appeal from the outcome of the BYU academic dispute resolution proceedings.

## RELEVANT FACTS

1.      The stay proposed by BYU is to allow the parties to participate in BYU's dispute resolution proceedings wherein BYU will determine, subject to review by the Court, how to allocate the Developer funds from the Pfizer litigation between Dr. Xie and Dr. Simmons. $1 million of the Developer funds is the same $1 million that Plaintiff Beus Gilbert LLP seeks to interplead in this action. Docket Nos. 2, 7. An additional $1 million is already held in trust by BYU in case others claim Developer status during a prescribed period. The remaining Developer funds, which represent a significantly greater sum than the above amounts, were prematurely distributed to Dr. Simmons on June 12, 2012 before the BYU academic review process was completed, as BYU has admitted as explained further below. *See* Facts ¶ 2, *infra*.

2.      On January 4, 2013, BYU sent a letter to Dr. Simmons and Dr. Xie, which states "[u]nder all of the circumstances, **BYU views the Preliminary Simmons Distribution as premature**. . . . **BYU believes the funds are in possession of Simmons by way of constructive**

3

**trust pending final determination of the allocation** of distributable net income as provided in the Policy."  Exhibit A at 3 (emphasis added).

      3.      On February 5, 2013, BYU sent a letter to Dr. Simmons and Dr. Xie, which states that it has "concluded that an impasse exists related to distribution of proceeds of [the entirety of the Developer] settlement funds received pursuant to settlement of a lawsuit with Pfizer, Inc." and that "BYU has concluded that a dispute exists that must be resolved pursuant to the terms of the Policy."  Exhibit B at 1-2.  BYU then states in the letter that it "is initiating the dispute resolution procedures called for under the Policy."  *Id.* at 2.

      4.      On February 21, 2013, Dr. Simmons responded to BYU's February 5, 2013 letter.  *See* Exhibit C.  In the letter, Dr. Simmons agrees that there is a dispute regarding the distribution of the Developer funds, and that Dr. Simmons and Dr. Xie have reached an impasse.  In addition, Dr. Simmons states "a dispute exists which must be resolved pursuant to the dispute resolution procedure set forth in the BYU Intellectual Property Policy. . . . Dr. Simmons intends to participate in the procedures."  *Id.*

      5.      Despite BYU's January 4, 2013 letter, Dr. Simmons has declined to return the prematurely distributed Developer funds to BYU or to deposit the funds into a trust under the Court's jurisdiction or BYU's control and has failed to even acknowledge that he is holding the prematurely distributed funds in trust pending the outcome of BYU's dispute resolution proceedings and the Court's review of such proceedings.

      6.      On March 11, 2013, BYU filed its Motion to Stay Pending Completion of Internal University Academic Procedures, i.e., the dispute resolution proceedings ("Motion to Stay").  Docket No. 64.

      7.      On March 20, 2013, Dr. Simmons joined BYU's Motion to Stay.  Docket No. 68.

8. Dr. Xie sent BYU a letter on March 20, 2013 regarding BYU's proposal to stay the case pending completion of the academic dispute resolution proceedings. *See* Exhibit D. Dr. Xie made a number of suggestions for procedural safeguards to the proceedings BYU is initiating to determine the distribution of all of the Developer funds, including that Dr. Simmons return the Developer funds that were distributed to him prematurely by BYU before a decision had been made by BYU as to the proper allocation between Dr. Simmons and Dr. Xie. *Id.*

9. On April 8, 2013, Dr. Xie sent another letter to BYU again proposing a number of procedural safeguards for BYU's academic dispute resolution proceedings, including among other things that the parties have the right to appeal the result to this Court and that Dr. Simmons return the prematurely distributed Developer funds to BYU or place the prematurely distributed funds in a trust account under the Court's jurisdiction. *See* Exhibit E.

10. On April 24, 2013, BYU sent a letter to Dr. Simmons and Dr. Xie notifying them that the University Faculty Development and Research Council appointed a three-member subcommittee for the academic dispute resolution proceedings between Dr. Xie and Dr. Simmons. *See* Exhibit F.

11. On May 7, 2013, BYU sent a letter to Dr. Simmons and Dr. Xie outlining the process the academic subcommittee appointed by BYU intends to follow for the academic dispute resolution proceedings between Dr. Xie and Dr. Simmons. *See* Exhibit G.

## ARGUMENT

Without waiving any challenges Dr. Xie has or may raise with respect to this interpleader action or the cross-claims alleged by Defendants BYU and Dr. Simmons, including his challenge to the Court's personal jurisdiction over him as a 20 year resident of the State of California, and

reserving all other rights[1] including his right to pursue his own legal remedies against Dr. Simmons and the Beus Gilbert law firm in California where Dr. Xie resides and was damaged, Dr. Xie responds that he does not oppose BYU's Motion to Stay pending the outcome of BYU's dispute resolution proceedings conditioned on the right to appeal the result to this Court and the deposit of all Developer funds into a trust, including the non-interpleaded Developer funds which BYU agrees were prematurely distributed to Dr. Simmons.

Of the total Developer funds, $1 million has been sought to be interplead by Plaintiff Beus Gilbert. Docket Nos. 2, 7. An additional $1 million is currently held by BYU, in case others claim Developer status during a prescribed period. Facts ¶ 1. The remaining Developer funds, which represent a significantly greater sum than the above amounts, were prematurely disbursed to Dr. Simmons before the University had made a determination as to the proper allocation of funds between Dr. Simmons and Dr. Xie. Facts ¶¶ 1, 2.

As BYU stated in its January 4, 2013 letter, "[u]nder all of the circumstances, **BYU views the Preliminary Simmons Distribution as premature** . . . . **BYU believes the funds are in possession of Simmons by way of constructive trust pending final determination of the allocation** of distributable net income as provided in the Policy." Exhibit A at 3 (emphasis added); Facts ¶ 2.

Dr. Xie has repeatedly requested that a stay to participate in BYU's dispute resolution proceedings be conditioned on the right to appeal the result to this Court and Dr. Simmons' return of the prematurely distributed Developer funds for BYU to hold in trust pending the

---

[1] Even though Dr. Xie does not oppose BYU's request for a stay, Dr. Xie's response is in no way an explicit or implicit agreement to the factual and legal characterizations contained in BYU's Motion to Stay, in particular the supposedly "Relevant Facts" section.

outcome of the dispute resolution proceedings and review thereof by the Court. *See* Exhibit D at 2; Exhibit E at 6-7; Facts ¶¶ 5, 8.

There is no just reason for Dr. Simmons to refuse to return or place the prematurely distributed Developer funds into a trust account under this Court's jurisdiction in light of Dr. Xie's repeated requests and BYU's agreement that the funds were prematurely distributed to him. To date, however, Dr. Simmons has declined to return the funds to BYU, much less even acknowledge that the funds are being held in a trust account under this Court's jurisdiction, although in joining BYU's Motion to Stay, Dr. Simmons has agreed to participate in BYU's dispute resolution proceedings concerning all of the Developer funds. Facts ¶¶ 5, 7; Docket No. 68 at 2 ("BYU is in the process of implementing the dispute resolution procedure of its Intellectual Property Policy . . . . BYU's resolution of these issues will provide clarity and insight into, and is a predicate to, resolution of the parties' dispute in this Court.").

This Court has "broad discretion" to impose trusts with respect to the Developer funds, including the Developer funds prematurely distributed to Dr. Simmons. *See Rawlings v. Rawlings*, 240 P.3d 754, 768 (Utah 2010) (reversing the court of appeals and holding that the district court acted "within the bounds of its discretion in imposing a constructive trust."). In Utah, constructive trusts are recognized as a matter of equity where there has been: (1) a wrongful act; or (2) unjust enrichment; and (3) specific property that can be traced to the wrongful behavior. *See Goggin v. Goggin,* 267 P.3d 885, 892 (Utah 2011) (citations and quotations omitted). To establish unjust enrichment, "an entity obviously must have received funds by mistake or participated in active or egregious misconduct." *Nilson v. JPMorgan Chase Bank, N.A.*, 690 F. Supp. 2d 1231, 1252 (D. Utah 2009) (citation omitted). The Utah Supreme Court has also noted that "unjust enrichment, in the traditional sense of an inequitable retention

of benefits, will support imposition of a constructive trust, even absent wrongful conduct." *Rawlings,* 240 P.3d at 767 n. 62.

The requirements for imposition of a constructive trust over the Developer funds prematurely distributed to Dr. Simmons are easily met here. Dr. Simmons has been unjustly enriched by having received the premature distribution, without Developers Dr. Xie and Dr. Simmons having come to an agreement on the distribution as required by BYU's policies, because BYU erroneously believed there was an agreement between Dr. Xie and Dr. Simmons as a result of Dr. Simmons' representations to BYU. *See* Exhibit A; Facts ¶¶ 1-4. Finally, specific property, the prematurely distributed Developer funds, can be traced to Dr. Simmons' wrongful behavior. Accordingly, the requirements for imposition of a constructive trust are met, and it is within this Court's power to impose a constructive trust with respect to the Developer funds improperly distributed to Dr. Simmons as a condition of the stay.

The imposition of a constructive trust, in addition to the right to appeal, would effectuate the intent of the parties in staying this case to attempt to resolve their dispute through BYU's academic dispute resolution proceedings. Such dispute resolution proceedings would obviously be biased against Dr. Xie, and potentially a waste of the parties' resources, if there is no guarantee that all the Developer funds potentially owed to Dr. Xie are actually available to be distributed to him at the conclusion of the proceedings and any review by this Court.

Dr. Xie has also requested that a number of other procedural safeguards be instituted for the BYU academic dispute resolution proceedings, including for example the right of parties to seek judicial review of the result. *See* Exhibits D and E; Facts ¶¶ 8-9. The right of appeal, as well as the other proposed procedural safeguards, is derived from dispute resolution or scientific

policies currently implemented by BYU and/or other leading universities in the relevant fields. *See* Exhibits D and E.

## CONCLUSION

For the reasons stated above, Dr. Xie does not object to BYU's request for a stay pending the outcome of dispute resolution proceedings conditioned on the right to appeal the result to this Court and the deposit of all of the Developer funds into a trust under this Court's jurisdiction, including the non-interpleaded Developer funds which BYU admits were prematurely distributed to Dr. Simmons. Dr. Xie does so without waiving any challenges to the interpleader case or the cross-claims asserted herein, and reserving all other rights, including the right to appeal BYU's academic decision on inventorship to this Court, *see Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998), and if necessary, pursue his own legal remedies against the Beus Gilbert law firm and/or Dr. Simmons in a separate court action. For the Court's convenience, Dr. Xie is submitting a proposed order regarding the stay of this case sought by BYU but incorporating the proposed trust requested in the BYU letter and sought by Dr. Xie in response to BYU's motion.

Dated: May 28, 2013

        HATCH, JAMES, & DODGE, P.C.

        By    /s/ Mark F. James
            BRENT O. HATCH
            MARK F. JAMES
            Attorneys for Weilin Xie

        QUINN EMANUEL URQUHART & SULLIVAN, LLP

        By    /s/ Joseph M. Paunovich
            FREDERICK A. LORIG

JAMES R. ASPERGER
JOSEPH M. PAUNOVICH
Attorneys for Weilin Xie

10