ERIK A. OLSON [8479]
EOLSON@MOHTRIAL.COM
TREVOR C. LANG [14232]
TLANG@MOHTRIAL.COM
**MARSHALL OLSON & HULL, PC**
NEWHOUSE BUILDING
TEN EXCHANGE PLACE, SUITE 350
SALT LAKE CITY, UTAH 84111
TELEPHONE: 801.456.7655

R. WILLIAM BEARD, JR.
PRO HAC VICE
WBEARD@SGBFIRM.COM
**SLAYDEN GRUBERT BEARD PLLC**
401 CONGRESS AVE., SUITE 1900
AUSTIN, TEXAS 78701
TELEPHONE: 512.402.3556

ATTORNEYS FOR DONALD L. ROBERTSON TRUST

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BEUS GILBERT PLLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRIGHAM YOUNG UNIVERSITY, WEILIN XIE, AND DANIEL SIMMONS<br><br>Defendants. | Case No. 2:12-cv-970-RJS<br><br>**ROBERTSON TRUST'S NOTICE OF SUPPLEMENTAL AUTHORITIES**<br><br>(DUCivR 7-1(B)(4))<br><br><br>Honorable Robert J. Shelby<br>United States District Judge<br><br>**HEARING DATE:** February 18, 2016 |
| BEUS GILBERT PLLC,<br><br>Plaintiff,<br><br>vs.<br><br>DONALD ROBERTSON, BRIGHAM YOUNG UNIVERSITY, WEILIN XIE, AND DANIEL SIMMONS<br><br>Defendants. | |

Pursuant to DUCivR 7-1(b)(4), Defendant and Cross Claimant, The Donald L. Robertson Trust ("Robertson Trust"), hereby gives notice of authorities that have come to its attention after the February 18, 2016 hearing on the Robertson Trust's Motion for Leave to Amend Cross Claims.

## I.     REASON FOR SUPPLEMENTAL CITATIONS

At the hearing, the Court inquired whether authorities supported several propositions offered by counsel to explain how the Robertson Trust's claims for breach of contract and misappropriation of trade secrets are not futile. The Robertson Trust offers the following authority pertaining to the each of the Court's inquiries.

## II.    MAY A UNIVERSITY INTELLECTUAL PROPERTY POLICY BE RECOGNIZED AS A VALID AND ENFORCEABLE PART OF AN EMPLOYMENT CONTRACT?

University patent policies have long been recognized as valid and enforceable parts of employment contracts. *See, e.g.*, *Charest v. President and Fellows of Harvard College*, 2016 WL 614368, at *12 (D. Mass., Feb. 16, 2016) (Harvard University's IP Policy is part of employment contract); *St. John's Univ., New York* v. *Bolton,* 757 F. Supp. 2d 144, 161 (E.D.N.Y. 2010) ("Federal courts have consistently upheld the validity of patent-assignment obligations imposed on university students, faculty and staff . . . ."); *Regents of the Univ. of New Mexico* v. *Knight*, 321 F.3d 1111, 1118 (Fed. Cir. 2003) (finding that the university patent policy formed an "implied contract"); *Fenn* v. *Yale Univ.*, 283 F. Supp. 2d 615, 628–29 (D. Conn. 2003) ("University patent policies such as Yale's have long been recognized as a valid and enforceable part of the contract of employment.") (citing *Chou* v. *Univ. of Chicago*, 254 F.3d 1347, 1356–57 (Fed. Cir. 2001) and *Univ. of West Virginia Bd. of Trustees* v. *VanVoorhies*, 84 F. Supp. 2d 759, 769–71 (N.D. W.Va. 2000)). "It would be unfair to allow an employer to distribute a policy manual that makes the workforce believe that certain promises have been made and then to allow the employer to renege

on those promises." *Charest*, 2016 WL 614368, at *12 (D. Mass., Feb. 16, 2016) (quoting *Ferguson v. Host Intern. Inc.*, 757 N.E.2d 267, 271 (Mass. App. 2001)).

In the present case, the BYU IP Policy was a valid and enforceable part of the employment agreements it had with its professors, in particular, Dr. Robertson, Dr. Simmons and Dr. Xie. Whether an IP policy speaks in "mandatory" terms or merely provides "guidance" is a factor to consider, wherein mandatory terms tend to prove the IP policy is a binding contract. *See Charest*, 2016 WL 614368, at *11. In the present case, both the 1992 and 2001 versions of the BYU IP Policy speak in "mandatory" terms. *See, e.g.*, Document 218-1, page 14 ( 1992 - "Intellectual property or creative works developed by University personnel within their field of expertise and/or scope of employment at the University, and within the limitations described in Paragraph 1, are the property of the University"); *Id.*, page 41 (2001 – "Pursuant to law and university policy, and without an express agreement specifying otherwise, any work (whether a technical work or a creative work) prepared by university personnel within the scope of their employment is work for hire owned by the university.")

### III.  IS IT PROPER FOR THE COURT TO DECIDE WHICH VERSION OF A UNIVERSITY'S INTELLECTUAL PROPERTY POLICY IS APPLICABLE TO A TECHNOLOGICAL DEVELOPMENT?

A court should properly decide which among several versions of an intellectual property policy is applicable to a particular technology. *Fenn v. Yale University*, 283 F. Supp. 2d 615, 629 (D. Conn. 2003) (citing *Chou v. University of Chicago*, 254 F.3d 1347, 1356–57 (Fed. Cir. 2001)). In *Fenn*, Dr. Fenn conceded that he was bound by and consented to Yale's 1975 patent policy, and Yale amended its patent policy in 1984, 1988 and 1989. *Id.* at 629. The *Fenn* Court concluded that Yale's 1989 patent policy applied to the invention because Dr. Fenn had disclosed the invention to Yale after the effective date of the 1989 patent policy. *Id.* at 630.

A declaration that a certain patent policy is applicable to the case may settle a dispute. *Regents of University of New Mexico v. Knight*, 2000 WL 36116702, at *1 (D. N.M., Mar. 21, 2000). In *Regents of University of New Mexico*, the University of New Mexico argued its 1989 Intellectual Property Policy applied to patent applications at the center of the litigation. *Id.* at *2. However, the Court held that the 1983 Patent Policy applied because the invention was first disclosed to the university in June 1987, so that the 1983 Patent Policy was the version of the policy in effect at the time of the disclosure. *Id.* at *1–2.

In *Crea v. City of Hope*, two version of an intellectual property policy were at issue: the 1972 Intellectual Property Policy, and the 1983 Intellectual Property Policy. *Crea v. City of Hope*, 2010 WL 11198883, at *12 (C.D.C.A. Oct. 4, 2010). The court found the 1972 Intellectual Property Policy controlling because the inventor had only worked at the City of Hope between May 1977 and the fall of 1978 and there was no evidence that the parties had agreed to make the 1983 Intellectual Property Policy retroactively applicable to the invention. *Id.* at *12–13.

In the present case, BYU asserts that the 2001 BYU IP Policy is applicable to the COX-2 development and the Robertson Trust asserts that the BYU IP Policy in effect from 1989-1991 is applicable. *See* Document [189], BYU's Notice of Positions (arguing the 2001 BYU IP Policy is applicable to COX-2); Document [218-1] Robertson Trust's First Amended Cross Claim (alleging breach of BYU IP Policy in effect from 1989-1991). It is proper for the Court to resolve this disputed issue between the parties.

### IV. UNDER UTAH CONTRACT LAW, WHAT IS REQUIRED FOR A UNIVERSITY'S INTELLECTUAL PROPERTY POLICY TO FORM PART OF AN EMPLOYMENT CONTRACT?

Knowledge of a university's intellectual property policy and employment thereafter are all that is required for inclusion in an employment contract. "When an employee admittedly has

knowledge of a distributed handbook's provision that modifies the employment contract and continues to work for the employer after gaining such knowledge, the modified contract prevails, and previous, contradictory conditions have no effect." *Johnson v. Kimberly Clark Worldwide, Inc.*, 86 F.Supp.2d 1119, 1122 (D. Utah 2000) (quoting *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 401 (Utah 1998). The terms of an employee manual may constitute terms of an employment contract even when the employees do not receive the manual until after they are hired. *Caldwell v. Ford, Bacon & Davis, Inc.*, 777 P.2d 483, 485 (Utah 1989).

> If the handbook language constitutes an offer, and the offer has been communicated by dissemination of the handbook to the employee, the next question is whether there has been an acceptance of the offer and consideration furnished for its enforceability. In the case of unilateral contract for employment, where an at-will employee retains employment with knowledge of new or changed conditions, the new or changed conditions may become a contractual obligation. In this manner, an original employment contract may be modified or replaced by a subsequent unilateral contract. The employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employment supplies the necessary consideration for the offer.

*Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn. 1983) (reasoning adopted by *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 401 (Utah 1998)). An employee manual creates an implied contract where "employees may reasonably rely on the document's provisions and may expect the employer to conform to the procedures it outlines." *Cabaness v. Thomas*, 232 P.3d 486, 502 (Utah 2010).

In the present case, the Robertson Trust pled that Dr. Robertson knew of the BYU IP Policy and that he continued his employment at the university thereafter. Specifically, Robertson Trust pled that Dr. Robertson was a BYU professor between 1980 and 1995. Document [218-1], ¶¶ 7 & 16. At all times during his employment at BYU, Dr. Robertson faithfully performed all that was required of him under his employment agreement with BYU, including the BYU IP Policy that

4

was effective from 1989 through 1992 during the development of COX-2. *Id.*, ¶ 15. On October 24, 2013, Dr. Robertson wrote a letter to BYU stating that "the discovery of COX-2 was actually between Dr. Simmons, Dr. Xie and myself" (*Id.*, page 67 (Ex. 1)), such that "[t]he acknowledgement of the participants in this discovery is consistent with research policies which are firmly established at both universities and in industry for the acknowledgement of contributions to any discovery." *Id.*, page 64 (Ex. 4). Robertson Trust expressly pled that the BYU IP Policy that was effective from 1989 through 1992 during the development of COX-2 is a valid contract between BYU and Dr. Robertson. Document [218-1], ¶ 27. Thus, the Robertson Trust pled factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

DATED this 23rd day of February, 2016.

BY: /s/ *William Beard*
R. WILLIAM BEARD, JR.
**SLAYDEN GRUBERT BEARD PLLC**

ERIK A. OLSON
TREVOR C. LANG
**MARSHALL OLSON & HULL, PC**

ATTORNEYS FOR THE DONALD L. ROBERTSON TRUST

## CERTIFICATE OF SERVICE

I hereby certify that this 23rd day of February, 2016, I caused the foregoing ROBERTSON TRUST'S NOTICE OF SUPPLEMENTAL AUTHORITIES to be filed via the Court's CM/ECF system, which transmitted notice of such filing to all counsel of record.

BY: /s/ *William Beard*
R. WILLIAM BEARD, JR.
**SLAYDEN GRUBERT BEARD PLLC**