IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BEUS GILBERT PLLC,<br><br>       Plaintiff,<br><br>v.<br><br>BRIGHAM YOUNG UNIVERSITY, WEILIN XIE, DANIEL L. SIMMONS, AND DONALD L. ROBERTSON TRUST,<br><br>       Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DONALD L. ROBERTSON TRUST'S MOTION TO DISMISS BYU'S CROSSCLAIM FOR DECLARATORY RELIEF<br><br><br>Case No. 2:12-CV-970-TS-CMR<br><br>District Judge Ted Stewart |

This matter is before the Court on the Donald L. Robertson Trust's Motion to Dismiss Brigham Young University's ("BYU") Crossclaim for Declaratory Relief. For the reasons discussed below, the Court will grant the Motion in part and deny it in part.

    I.    BACKGROUND

In 1992, BYU biochemists discovered the COX-2 enzyme. After BYU communicated its discovery to Pfizer, Pfizer developed Celebrex, a nonsteroidal anti-inflammatory drug. In 2006, BYU sued Pfizer for misappropriation of trade secrets, and the parties settled in 2012.[1] BYU's counsel, Beus Gilbert PLLC, received $450 million from Pfizer as part of the settlement (the "Settlement Funds"). Of the $450 million, Beus Gilbert allocated 55% of the funds to BYU and 45% to be distributed to the biochemists responsible for the discovery. BYU's 2001 Intellectual Property Policy (the "2001 Policy") and corresponding university administrative procedures determined that Dr. Weilin Xie and Dr. Daniel L. Simmons were the developers of the COX-2 enzyme. Subsequently, Dr. Donald L. Robertson claimed he was also entitled to a portion of the

---

[1] *Brigham Young Univ. v. Pfizer*, No. 2:06-cv-00890-TS.

Settlement Funds. Because of multiple disputes regarding the allocation of Settlement Funds, Beus Gilbert filed an interpleader action against BYU, Xie, and Simmons in 2012,[2] and against Robertson in 2014.[3] Robertson then asserted crossclaims against BYU.[4] Robertson has since passed away and his successor in interest, the Donald L. Robertson Trust (the "Trust") was substituted as a party to the case.

## II. PROCEDURAL HISTORY

The current dispute first arose from the Trust's motion for leave to file amended crossclaims.[5] In that motion the Trust asserted three amended crossclaims: first, that BYU breached its employment contract with Robertson under the Intellectual Property Policy effective from 1989 to 1992 (the "1992 Policy"); second, that BYU breached its contract with Robertson under the 2001 Policy, which was used to distribute Settlement Funds to Simmons and Xie; and third, misappropriation of trade secrets.

BYU argued that the Trust's amended crossclaims were futile and warranted dismissal. This Court, per the Honorable Robert J. Shelby, agreed and denied the Trust's motion for leave to file amended crossclaims. The Trust appealed Judge Shelby's order to the Tenth Circuit Court of Appeals.

The Tenth Circuit affirmed Judge Shelby's order in part and reversed it in part.[6] The Tenth Circuit held that the Trust plausibly asserted a crossclaim against BYU for breach of

---

[2] Docket No. 1.
[3] Docket No. 105.
[4] Docket No. 116.
[5] Docket No. 218.
[6] *Beus Gilbert PLLC v. Donald L. Robertson Trust*, No. 20-4061, 2021 WL 1712573 (10th Cir. Apr. 30, 2021).

2

contract under the 1992 Policy and remanded for further proceedings. However, the Tenth Circuit stated that the Court properly denied the Trust's crossclaim for breach of contract under the 2001 Policy and its claim for misappropriation of trade secrets. Specifically, the Tenth Circuit held that the Trust did not have a valid breach of contract claim under the 2001 Policy because Robertson was no longer employed by BYU at the time it adopted the 2001 Policy.

On remand the Trust filed its amended crossclaim against BYU for breach of contract under the 1992 Policy. BYU answered asserting affirmative defenses and crossclaims for declaratory relief. The Trust now moves to dismiss BYU's crossclaims. The Trust argues: (1) BYU's crossclaims improperly mirror its affirmative defenses; (2) BYU's arbitration crossclaim based on the 2001 Policy is implausible because the Court previously dismissed the breach of contract claim under the 2001 Policy; and (3) BYU's crossclaim seeking a declaration of which version of the Intellectual Property Policy applies to this case is asking the Court for an improper advisory opinion.[7]

### III.     STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) alleges that the pleadings fail "to state a claim upon which relief can be granted."[8] Courts must consider all well-pled allegations in the complaint as true and must construe all factual allegations in the light most favorable to the plaintiff.[9] To survive a motion to dismiss, a plaintiff must nudge his or her claim "across the line from conceivable to plausible."[10] Plausibility requires "more than an unadorned, the-

---

[7] Docket No. 312.

[8] Fed. R. Civ. P. 12(b)(6).

[9] *Albright v. Oliver*, 510 U.S. 266, 268 (1994).

[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007).

defendant-unlawfully-harmed-me accusation."[11] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[12]

In considering a motion to dismiss, a district court not only considers the complaint "but also the attached exhibits,"[13] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[14] Courts "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[15]

## IV. DISCUSSION

Federal courts have broad discretion in granting or denying declaratory relief.[16] The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[17] The Declaratory Judgement Act is "an authorization, not a command."[18] It gives "the federal courts competence to make a declaration of rights," but does "not impose a duty to do so."[19]

---

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[13] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[14] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[15] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[16] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995).

[17] 28 U.S.C. § 2201(a).

[18] *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962).

[19] *Id.*

The Tenth Circuit has identified five factors (the "*Mhoon* factors") courts should consider when deciding whether to hear a declaratory judgment action:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.[20]

The Trust moves to dismiss BYU's following crossclaims for declaratory relief: (1) that the Trust is estopped from asserting any crossclaims against BYU; (2) that the Trust is barred by one or more of the doctrines of laches, waiver, and failure to perform contractual obligations; (3) that BYU is entitled to use arbitration procedures set forth in the 2001 Policy to determine allocation of the Settlement Funds; and (4) a declaration of which Intellectual Property Policy, if any, is enforceable in this dispute.

After weighing the *Mhoon* factors, the Court concludes that it will not exercise its discretion over the first, second, and third crossclaims and will grant the motion to dismiss them. However, the Court will exercise its discretion to consider the fourth crossclaim to declare which Intellectual Property Policy, if any, is enforceable in this dispute. Accordingly, it will deny the motion to dismiss the fourth crossclaim.

### A. FIRST AND SECOND CROSSCLAIMS

In its first and second crossclaims, BYU seeks (1) a declaration that the Trust has no enforceable claim under the doctrine of equitable estoppel, and (2) a declaration that any of the

---

[20] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (citation omitted).

Trust's claims are barred by one or more of the doctrines of laches, waiver, and failure to perform contractual obligations.

The Trust argues these crossclaims improperly mirror BYU's affirmative defenses for denial of allegations, estoppel, laches, waiver, statute of limitations, lack of enforceable contract due to indefiniteness, failure to perform contract obligations, and the right to raise additional defenses and amend this answer.

BYU responds by arguing that its crossclaims for declaratory relief would clarify "whether bars to the Trust's alleged rights under the [Intellectual Property] Policy (estoppel, laches, waiver, and failure to perform) would justify BYU in terminating ongoing internal policy procedures because any future outcome would be irrelevant."[21]

This Court agrees with the Trust. BYU's first and second crossclaims are redundant since they mirror the affirmative defenses. The issue of whether the Trust's breach of contract claim would be precluded by estoppel, laches, waiver, or failure to perform contractual obligations will be addressed in the course of litigation through BYU's affirmative defenses and would render the crossclaims moot. Other courts have dismissed a defendants' declaratory judgment counterclaim where it merely reiterated their other defenses: "Put simply, there is no need for this counterclaim. If the Defendants prevail on any one of their remaining defenses, judgment will be in favor of Defendants."[22] The Court finds this reasoning persuasive.

Although granting BYU's declaratory judgment for estoppel, laches, waiver, and failure to perform contractual obligations may settle the Trust's breach of contract claim and may even

---

[21] Docket No. 313, at 16.

[22] *United States v. Land O'Lakes, Inc.*, No. CIV-16-170-R, 2017 WL 706346, at *11 (W.D. Okla. Feb. 22, 2017); *see also Sprint Nextel Corp. v. Middle Man, Inc.*, No. 12-2159-JTM, 2013 WL 1197137, at *2 (D. Kan. Mar. 25, 2013).

"serve a useful purpose in clarifying the legal relations at issue," BYU's affirmative defenses provide an "alternative remedy that is better [and] more effective" than declaratory judgment.[23] The resolution of the case itself will make BYU's declaratory action unnecessary. For this reason, the Court will not exercise its authority to issue declaratory judgment on BYU's first and second crossclaims. However, the issues of estoppel, laches, waiver, and failure to perform contractual obligations will remain as BYU's affirmative defenses.

    B. THIRD CROSSCLAIM

BYU also asserts a crossclaim seeking a declaration that BYU is entitled to use arbitration procedures set forth in the 2001 Policy to determine allocation of the Settlement Funds.

The Trust argues that because the Court and the Tenth Circuit previously concluded that there was no plausible contract between BYU and Robertson under the 2001 Policy, the 2001 Policy has been dismissed from this case. The Trust further argues that the Tenth Circuit already considered the facts asserted by BYU and found them insufficient to support applicability of the 2001 Policy in this case.

In response, BYU argues that neither Judge Shelby nor the Tenth Circuit reviewed or ruled on BYU's declaratory judgment in any fashion; Judge Shelby and the Tenth Circuit only held that the Trust had not alleged a breach of contract claim under the 2001 Policy. Additionally, BYU argues that because it was not provided an opportunity to submit evidence or make factual assertions, the Trust's claim that the Tenth Circuit entirely "dismissed" the 2001 Policy from the case is inaccurate.

---

[23] *Mhoon*, 31 F.3d at 983.

Here, the law-of-the-case doctrine supports a finding in favor of the Trust. The law-of-the-case doctrine bars re-litigation of issues already settled by an appellate court.[24] "It is well settled that all matters decided on appeal become the law of the case to be followed in all subsequent proceedings in both the trial and appellate court."[25] The doctrine "applies where the evidence is substantially the same on both trials. It does not have application if the evidence on the subsequent trial presents a materially different situation"[26] In the interest of judicial efficiency, the doctrine "is designed to bring about a quick resolution of disputes by preventing continued re-argument of issues already decided."[27]

The law-of-the-case doctrine applies to issues resolved implicitly and explicitly.[28] Generally, there are three circumstances where a court might conclude that an issue was implicitly resolved in an earlier appeal: (1) resolution of the issue was a necessary step in resolving the earlier appeal; (2) resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal; and (3) the issue is so closely related to the earlier appeal its resolution involves no additional consideration and so might have been resolved but unstated.[29]

The first factor is inapplicable here. The Tenth Circuit dismissal of the Trust's breach of contract claim under the 2001 Policy did not rely on the enforcement of the 2001 Policy dispute

---

[24] *Gen. Motors Acceptance Corp. v. Mid-West Chevrolet Co.*, 74 F.2d 386, 388 (10th Cir. 1934).

[25] *Id.* (citations omitted).

[26] *Id*. (citations omitted).

[27] *Gage v. Gen. Motors Corp.*, 796 F.2d 345, 349 (10th Cir. 1986) (citations omitted).

[28] *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1036 (10th Cir. 2000) (citations omitted).

[29] *Guidry v. Sheet Metal Workers Intern. Ass'n, Local No. 9*, 10 F.3d 700, 707 (10th Cir. 1993).

resolution procedures to allocate the Settlement Funds. Thus, the issue in this case was not a necessary element of the decision made by the Tenth Circuit.

The second and third factors bear more weight because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit."[30] To require a party to submit to arbitration there must an agreement to arbitrate.[31] If the Court declares that Robertson and BYU must proceed with the dispute resolution procedures detailed in the 2001 Policy, the Court would have to find that BYU and Robertson had an enforceable contract under the 2001 Policy. This would abrogate the Tenth Circuit's prior decision. Additionally, because arbitration is a matter of contract, the issue of whether the 2001 Policy's dispute resolution procedures apply is closely related to whether BYU and Robertson had a contract. If there was no enforceable contract between Robertson and BYU under the 2001 Policy, then it follows that there was no agreement to arbitrate under the 2001 Policy.

Under the law-of-the-case doctrine, the Tenth Circuit implicitly settled this controversy when it dismissed the Trust's claim for breach of contract under the 2001 Policy. The Tenth Circuit's holding necessarily means, by extension, that the dispute resolution procedures described in the 2001 Policy do not govern this specific dispute with Robertson.

Although BYU argues that it asserts new factual allegations, the allegations and evidence before this Court are substantially the same as before the Tenth Circuit. For example, BYU alleges that it reasonably relied on Robertson's consent to follow the 2001 Policy, thus rendering

---

[30] *AT&T Tech., Inc. v. Comm. Workers*, 475 U.S. 643, 648 (1986) (citations omitted).
[31] *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

the arbitration procedures set forth in 2001 Policy binding.[32] This allegation was presented to the Tenth Circuit, and to the contrary, the Court stated that "Dr. Robertson denied the binding nature of the 2001 IP Policy and its procedures."[33]

The Tenth Circuit also addressed the Trust's argument that "the 2001 IP Policy applies because it was in effect when BYU received the settlement funds."[34] However, the Tenth Circuit rejected this, noting that "the Trust does not explain the relevance of this timing or say how Dr. Robertson could have performed under a contract formed after he had left BYU."[35]

This Court is not persuaded that BYU presented materially or substantially new allegations or evidence that would warrant a different conclusion. Although BYU argues that the Tenth Circuit and Judge Shelby did not review or rule on its specific declaratory judgment claim, the Tenth Circuit did rule on whether Robertson had plausibly alleged that he and BYU were under a contract governed by the 2001 Policy. This holding still stands. If there was no contract between Robertson and BYU under the 2001 Policy, then it follows that the 2001 Policy's dispute resolution procedures do not apply.

The Court will not use its discretionary powers to issue a declaration for BYU's 2001 Policy arbitration procedures.

C. FOURTH CROSSCLAIM

In the alternative, BYU requests the Court to declare which Intellectual Property Policy, if any, applies to this dispute. The Trust argues that seeking a declaration of which policy applies is asking the court to enter an advisory opinion.

---

[32] Docket No. 311, at 20.

[33] *Beus Gilbert PLLC*, 2021 WL 1712573, at *4.

[34] *Id.* at *4 n.4.

[35] *Id.*

"It is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff."[36] The Tenth Circuit has consistently held "that the test for determining an actual controversy via declaratory judgment proceedings is whether there is a controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of declaratory judgment."[37]

Here, there clearly remains a live case and controversy regarding the allocation of the Settlement Funds. The parties continue to dispute which policy, if any, is applicable. Because the 1992 and 2001 Policies contain distinct dispute resolution procedures, a declaration of which version of the policy, if any, controls in this case will allow the parties to determine the proper procedures to follow to allocate the Settlement Funds. This declaratory action will help settle the dispute and clarify the legal relations at issue.[38] Thus, BYU has sufficiently pleaded its request for declaratory action. The Court will not dismiss BYU's crossclaim seeking a declaration of which policy applies to this dispute.

## V.    CONCLUSION

It is therefore

ORDERED that Donald L. Robertson Trust's Motion to Dismiss BYU's Crossclaims for Declaratory Relief (Docket No. 312) is GRANTED IN PART and DENIED IN PART as explained above.

---

[36] *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994) (citations and internal quotation marks omitted).

[37] *Norvell v. Sangre de Cristo Dev. Co., Inc.*, 519 F.2d 370, 378 (10th Cir. 1975) (citations omitted).

[38] *See Mhoon*, 31 F.3d at 983.

DATED this 5th day of October, 2021.

BY THE COURT:

_____
Ted Stewart
United States District Judge