IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BEUS GILBERT PLLC,<br><br>                          Plaintiff,<br><br>v.<br><br>BRIGHAM YOUNG UNIVERSITY,<br>WEILIN XIE, DANIEL L. SIMMONS,<br>AND DONALD L. ROBERTSON TRUST,<br><br>                         Defendants. | MEMORANDUM DECISION AND ORDER DENYING ROBERTSON TRUST'S MOTION TO BAR ENFORCEMENT OF DISPUTE RESOLUTION CLAUSE AS UNCONSCIONABLE<br><br>Case No. 2:12-CV-970-TS-CMR<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Robertson Trust's ("the Trust") Motion to Bar Enforcement of Dispute Resolution Clause as Unconscionable. For the reasons discussed below, the Court will deny the Trust's Motion.

I.      BACKGROUND

In 1992, BYU biochemists discovered the COX-2 enzyme. After BYU communicated its discovery to Pfizer, Pfizer developed Celebrex, a nonsteroidal anti-inflammatory drug. In 2006, BYU sued Pfizer for misappropriation of trade secrets, and the parties settled in 2012.[1] BYU's counsel, Beus Gilbert PLLC, received $450 million from Pfizer as part of the settlement (the "Settlement Funds"). Of the $450 million, Beus Gilbert allocated 55% of the funds to BYU and 45% to be distributed to the biochemists responsible for the discovery. BYU's 2001 Intellectual Property Policy (the "2001 Policy") and corresponding university administrative procedures dictated that Dr. Weilin Xie and Dr. Daniel L. Simmons were the developers of the COX-2

---

[1] *Brigham Young Univ. v. Pfizer*, No. 2:06-cv-00890-TS.

enzyme. Subsequently, Dr. Donald L. Robertson claimed he was also entitled to a portion of the Settlement Funds and asserted a breach of contract claim. Robertson has since passed away and the Trust, his successor in interest, was substituted as a party to the case.

The Court previously found that BYU's 1992 IP Policy governed the Trust's claim and directed the parties to follow the procedures discussed in that policy.[2] The Trust now moves to bar enforcement of the dispute resolution clause of the 1992 IP Policy, arguing that it is unconscionable. Alternatively, the Trust seeks to sever and strike the method of selecting the arbitration panel contained in the dispute resolution clause.

## II. DISCUSSION

"The enforceability of the agreement is a matter of state law."[3] Under Utah law, arbitration agreements, generally speaking, are not substantively unconscionable. The Utah Supreme Court has emphasized "that arbitration agreements are favored in Utah."[4] However, certain terms may be unconscionable.

> The arguments for and against substantive unconscionability focus on the contents of the agreement, examining the relative fairness of the obligations assumed. When determining whether a contract is substantively unconscionable, we have considered whether its terms [are] so one-sided as to oppress or unfairly surprise an innocent party or whether there exists an overall imbalance in the obligations and rights imposed by the bargain.[5]

However, if an agreement is merely "unreasonable or more advantageous to one party, the contract, without more, is not unconscionable" and the "party claiming unconscionability bears a heavy burden."[6]

---

[2] Docket No. 356.

[3] *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1251 (10th Cir. 2018) (citation omitted).

[4] *Sosa v. Paulos*, 924 P.2d 357, 359 (Utah 1996).

[5] *Id.* at 361 (internal quotation marks and citations omitted) (alteration in original).

[6] *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998).

Here, the Trust argues that the dispute resolution provision of the 1992 IP Policy is unconscionable. That provision states:

> Any dispute involving the developers, the college, or the Technology Transfer Office which cannot be settled through informal discussions shall be submitted for mediation to the Associate Academic Vice President over Technology Transfer. If the dispute remains unresolved, either party may submit it for arbitration to a three-person panel to be selected from knowledgeable members of the University community as follows: one person selected by the developer, one person selected by the Associate Academic Vice President over Technology Transfer, and one person selected by the first two selectees. The arbitration process will be conducted in a fair manner in consultation with the Office of General Counsel as to procedure. The decision of the arbitration panel shall be in harmony with University policies and be binding on all parties.[7]

The Trust takes issue with the arbitrator selection process. More specifically, the Trust objects to potential arbitrators being limited to "members of the University community," which has been interpreted as including current faculty, staff, and students.[8] The Trust argues that this provision gives BYU an unfair advantage by limiting the pool of potential arbitrators to those who stand to benefit from BYU.

Courts have invalidated, as substantively unconscionable, arbitration provisions that allow one party to control the choice of arbitrators.[9] The dispute resolution provision at issue here, however, is not as extreme as others presented in the case law. For example, in *Hooters* the parties agreed to a similar selection method at issue here. However, the list of arbitrators was created exclusively by the employer, giving the employer complete control over the choice of

---

[7] Docket No. 301-1, at 5–6.

[8] Docket No. 362-1, at 4.

[9] *Beltran*, 907 F.3d at 1257–58 (applying California law); *Trout v. Organización Mundial de Boxeo, Inc.*, 965 F.3d 71, 78–80 (1st Cir. 2020); *McMullen v. Meijer, Inc.*, 355 F.3d 485, 494 (6th Cir. 2004); *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 204 (3d Cir. 2010); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939–40 (4th Cir. 1999).

arbitrators.[10] By contrast, the arbitrators here will have a link to BYU, but BYU does not have exclusive control over the pool of potential arbitrators. Staff, faculty, and students may all come and go.

The Trust argues that limiting the pool of potential arbitrators to current faculty, staff, and students gives BYU "an unfair advantage because the arbitration panel must be comprised entirely of persons directly under BYU's control."[11] However, the Trust "has not presented any evidence of likely bias—only assertion, which [is not] convincing."[12] As BYU points out, it "has nearly 2,000 faculty members, more than 10,000 staff members, and more than 30,000 students."[13] Each party selects an arbitrator from this large pool and those two arbitrators select the third. The proposition that the Trust will be unable to locate a qualified, neutral arbitrator from this large pool strains credulity. Moreover, even accepting the argument that the arbitration clause is more advantageous to BYU does not make it unconscionable.[14]

The Utah Supreme Court has made clear that "a showing of substantive unconscionability requires *evidence* that a term is 'so one-sided as to oppress or unfairly surprise an innocent party.'"[15] The Trust fails to point to any actual evidence, only argument. This is insufficient for the Trust to meet its heavy burden of demonstrating substantive unconscionability.

---

[10] *Hooters of Am., Inc.*, 173 F.3d at 938–39.

[11] Docket No. 362, at 5.

[12] *Sosa*, 924 P.2d at 361.

[13] Docket No. 363, at 6.

[14] *Sosa*, 924 P.2d at 362 ("[A] conclusion that a term is 'potentially advantageous' to one side or 'unreasonable' is insufficient, standing alone, to support a determination of substantive unconscionability.").

[15] *Id.* (quoting *Bekins Bar V Ranch v. Huth*, 664 P.2d 455, 462 (Utah 1983)) (emphasis added).

The Trust also complains about BYU's use of former Utah Supreme Court Justice Thomas Lee to interpret the IP Policy. However, the Trust's only substantive objection is Justice Lee's interpretation of the phrase "University community," which relates back to its unconscionability argument. Because that argument fails, the Court need not opine further on Justice Lee's involvement.

### III.   CONCLUSION

It is therefore

ORDERED that Defendant Robertson Trust's Motion to Bar Enforcement of Dispute Resolution Clause as Unconscionable (Docket No. 362) is DENIED. This action shall remain administratively closed pending arbitration.

DATED this 28th day of November, 2023.

BY THE COURT:

_____
Ted Stewart
United States District Judge