J. RYAN MITCHELL [9362]
RMITCHELL@MBMLAWYERS.COM
**MITCHELL BARLOW & MANSFIELD P.C.**
BOSTON BUILDING
9 EXCHANGE PLACE, SUITE 600
SALT LAKE CITY, UTAH 84111
Telephone: 801.998.8888

ATTORNEYS FOR DONALD L. ROBERTSON TRUST

R. WILLIAM BEARD, JR.
PRO HAC VICE
WBEARD@SGBFIRM.COM
JOSEPH GRAY
PRO HAC VICE
JGRAY@SGBFIRM.COM
TECUAN FLORES
PRO HAC VICE
TFLORES@SGBFIRM.COM
**SLAYDEN GRUBERT BEARD PLLC**
401 Congress Ave., Suite 1650
Austin, Texas 78701
Telephone: 512.402.3556

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BEUS GILBERT PLLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRIGHAM YOUNG UNIVERSITY, WEILIN XIE, AND DANIEL SIMMONS<br><br>Defendants. | Case No. 2:12-cv-970-TS-CMR<br><br>**ROBERTSON TRUST'S RESPONSE TO BYU'S MOTION TO CONFIRM ARBITRATION DECISION AND FOR ENTRY OF FINAL JUDGMENT [ECF No. 369]** |
| BEUS GILBERT PLLC,<br><br>Plaintiff,<br><br>vs.<br><br>DONALD ROBERTSON, BRIGHAM YOUNG UNIVERSITY, WEILIN XIE, AND DANIEL SIMMONS<br><br>Defendants. | TED STEWART<br>United States District Judge<br><br>CECILIA M. ROMERO<br>United States Magistrate Judge |

The Robertson Trust opposes BYU's Motion to Confirm Arbitration Decision and for Entry of Final Judgment ("Motion"). ECF No. 369. BYU interpreted the Dispute Resolution clause of its 1992 IP Policy to unconscionably require only current BYU faculty, staff and students may be selected for the arbitration panel. In so doing, BYU unconscionably exercised exclusive control to promulgate one-sided arbitration rules and procedures as to the selection of arbitration panel members. Because BYU limited the pool of arbitrators to individuals over which it has control, the Arbitration Decision was rendered by three current BYU employees who were evidently partial in favor of BYU because they depend on BYU for their paychecks, benefits, retirements, and research stipends. These close pecuniary and professional ties to BYU preclude the professors from being impartial as required by governing law. Thus, the Court should deny BYU's motion, sever and strike the arbitrator panel selection method from the Dispute Resolution clause, identify a pool of arbitrators from which the parties may select an impartial three-person panel, and order the parties to a second arbitration.

**I.     BACKGROUND.**

After deciding the 1992 IP Policy controls the Trust's claim for breach of contract, the Court construed "the 1992 Policy's dispute resolution clause broadly and [granted] BYU's Motion to Stay and [ordered] that the parties must follow the procedures discussed in the 1992 Policy to allocate the Settlement Fund." Order dated 08/24/2022, pg. 10. The Dispute Resolution clause of the 1992 IP Policy states,

> Any dispute involving the developers, the college, or the Technology Transfer Office which cannot be settled through informal discussions shall be submitted for mediation to the Associate Academic Vice President over Technology Transfer. If the dispute remains unresolved, either party may submit it for arbitration to a three-person panel to be selected from knowledgeable members of the University community as follows: one person selected by the developer, one person selected by the Associate Academic Vice President over Technology Transfer, and one person selected by the first two selectees. The arbitration process will be conducted in a fair manner in consultation with the Office of General Counsel as to procedure.

1

> The decision of the arbitration panel shall be in harmony with University policies and be binding on all parties.

ECF No. 301-1, pgs. 5-6. The Robertson Trust and BYU submitted the Trust's claim for mediation to the Associate Academic Vice President over Technology Transfer. However, a mediation held on February 24, 2023 did not resolve the Trust's claim. Thereafter, BYU submitted the unresolved claim for arbitration and disputes arose concerning: (1) whether arbitration panel members "selected from knowledgeable members of the University community" are limited to *current* BYU faculty, staff, and students; and (2) whether Justice Thomas R. Lee may exclusively promulgate arbitration procedures.

Regarding who may serve on the arbitration panel, the Trust argued, "University community" includes BYU alumni and former BYU employees. ECF No. 362-4, pg. 1. BYU argued, "University community" means "current BYU faculty, administration, and staff." ECF No. 362-3, pg. 2.

BYU unilaterally delegated the "University community" question to its employee, Justice Lee. Regarding who may promulgate arbitration procedures, the 1992 IP Policy requires, "[t]he arbitration process will be conducted in a fair manner in consultation with the Office of General Counsel as to procedure." ECF No. 301-1, pg. 6. The Trust objected to Justice Lee having authority to decide arbitration issues because the Dispute Resolution clause has no delegation clause granting BYU exclusive power to promulgate arbitration procedures and Justice Lee is biased by his BYU employment. ECF No. 362-5, pg. 1. BYU retained Justice Lee as "a designated agent for the Office of General Counsel" and contended he is in "position to resolve threshold procedural questions on behalf of the University." ECF No. 362-1, pg. 3; ECF No. 362-2, pg. 1. Justice Lee began his appointment as a tenured member of the BYU Law faculty on August 1, 2023. ECF No. 362-1, pg. 3.

Justice Lee determined the terms "University community" "of the 1992 Policy are best understood as a reference to current faculty, staff, and students." ECF No. 362-1, pg. 4.

In view of Justice Lee's interpretation of "University community," the Trust moved this court to bar enforcement of the dispute resolution clause as unconscionable because BYU unilaterally interpreted its 1992 IP Policy to require only current BYU faculty, staff, and students may be selected for the arbitration panel. ECF No. 362. BYU opposed the motion noting it "has nearly 2,000 faculty members, more than 10,000 staff members, and more than 30,000 students." ECF No. 363, at 6. This court found "the Trust has not presented any evidence of likely bias—only assertion, which is not convincing," determined "the proposition that the Trust will be unable to locate a qualified, neutral arbitrator from this large pool strains credulity," and denied the motion. ECF No. 368, at 4.

In the arbitration, the Trust selected Stephani Plamondon (Bruce C. Hafen Professor of Law), BYU selected Paul B. Savage, Ph.D. (Reed M. Izatt Professor of Chemistry and Biochemistry), and these two arbitrators selected Bryan Howell (Industrial Design Professor). All three arbitrators were current BYU faculty before, during, and after the arbitration.

## II.   UNCONSCIONABLITY STANDARDS.

The equitable doctrine of unconscionability may bar enforcement of an agreement to arbitrate. *ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 245 P.3d 184 (Utah 2010). The Utah Supreme Court divides the unconscionability doctrine into two branches: procedural unconscionability, which focuses on the formation of the agreement, and substantive unconscionability, which focuses on the agreement's contents." *Maxwell v. Fidelity Fin. Servs., Inc.,* 184 Ariz. 82, 907 P.2d 51, 56 (1995). Unconscionability includes " 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably

3

favorable to the other party.'" *Resource Management Co. v. Weston Ranch,* 706 P.2d 1028, 1041 (Utah 1985) (quoting *Williams v. Walker–Thomas Furniture Co.,* 350 F.2d 445, 449 (D.C.Cir.1965)); *Mitchell v. Wells Fargo Bank*, 280 F.Supp.3d 1261, 1292 (D. Utah 2017). "Gross disparity in terms, absent evidence of procedural unconscionability, can support a finding of unconscionability." *Resource Management,* 706 P.2d at 1041. The determination of whether a contract is unconscionable is a question of law for the court. *Id.*

### III. THE UNCONSCIONABLE "SELECTION" METHOD IS SEVERABLE FROM THE DISPUTE RESOLUTION CLAUSE.

The arbitration panel selection method of the Dispute Resolution clause is unconscionable and must be severed from the remainder of the Dispute Resolution clause. The Court can sever an offending method or provision from the remainder of an arbitration clause. *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1263 (10th Cir. 2018). In *Beltran*, the court found only one substantively unconscionable method—the requirement for one party to select the arbitrator—and the arbitration clause was not permeated by unconscionability. The *Beltran* court simply struck the phrase "before an arbitration provider selected by AuPairCare," to remove the substantively unconscionable provision without rewriting any portion of the clause because both federal and California law provided a default method for appointing an arbitrator. *See* 9 U.S.C. § 5 (if an arbitration agreement does not provide a method of selecting an arbitrator, "then upon the application of either party to the controversy the court shall designate and appoint an arbitrator"); Cal. Civ. Proc. Code § 1281.6 ("If the arbitration agreement does not provide a method for appointing an arbitrator, the parties to the agreement who seek arbitration and against whom arbitration is sought may agree on a method of appointing an arbitrator and that method shall be followed.").

Similarly, the substantive requirement that the panel be "selected from knowledgeable members of the University community…," which BYU interpreted as limited to "current BYU

4

faculty, staff, and students," must be severed and struck without rewriting any other portion of the Dispute Resolution clause of the 1992 IP Policy.

> Any dispute involving the developers, the college, or the Technology Transfer Office which cannot be settled through informal discussions shall be submitted for mediation to the Associate Academic Vice President over Technology Transfer. If the dispute remains unresolved, either party may submit it for arbitration to a three-person panel to be selected **[from a pool identified by the Court]** ~~from knowledgeable members of the University community~~ as follows: one person selected by the developer, one person selected by the Associate Academic Vice President over Technology Transfer, and one person selected by the first two selectees. The arbitration process will be conducted in a fair manner in consultation with the Office of General Counsel as to procedure. The decision of the arbitration panel shall be in harmony with University policies and be binding on all parties.

ECF No. 301-1, pgs. 5-6 (revisions added). As noted above, under federal law "the court shall designate and appoint an arbitrator," where the arbitrator selection process is stricken as unconscionable. 9 U.S.C. § 5; *Beltran*, 907 F.3d at 1263. Utah law similarly provides for the Court to appoint the arbitrator, where the appointment method fails.

> If the parties to an agreement to arbitrate agree on a method for appointing an arbitrator, that method must be followed, ***unless the method fails***. If the parties have not agreed on a method, ***the agreed method fails***, or an arbitrator appointed fails or is unable to act and a successor has not been appointed, ***the court***, on motion of a party to the arbitration proceeding, ***shall appoint the arbitrator***.

U.C.A. 1953 § 78B-11-112 (1). Thus, the Court must sever and strike the arbitrator panel selection method from the Dispute Resolution clause, identify an unbiased pool of arbitrators such as the American Arbitration Association or JAMS, and order the Dispute Resolution clause to be otherwise enforced.

### IV. BYU'S INTERPRETATION OF THE ARBITRATOR SELECTION METHOD WAS UNCONSCIONABLE.

Unconscionability includes "'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Resource Management Co. v. Weston Ranch,* 706 P.2d 1028, 1041 (Utah 1985) (quoting *Williams*

5

*v. Walker–Thomas Furniture Co.,* 350 F.2d 445, 449 (D.C.Cir.1965)); *Mitchell v. Wells Fargo Bank*, 280 F.Supp.3d 1261, 1292 (D. Utah 2017). In particular, "arbitration agreements that give the employer an unreasonable advantage over the employee in the selection of an arbitrator are unconscionable." *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 204 (3rd Cir. 2010); *see also Beltran v. Aupaircare, Inc.*, 907 F.3d 1240 (10th Cir. 2018) (unconscionable because only Aupaircare was allowed to select the arbitrator); *Murry v. United and Com. Workers Union*, 289 F.3d 297 (4th Cir. 2002) (an appointment mechanism which require arbitrators to be selected from a list unilaterally prepared by the employer was unconscionable); *Trout v. Organización Mundial de Boxeo, Inc.*, 965 F.3d 71, 78-80 (1st Cir. 2020); *McMullen v. Meijer, Inc.*, 355 F.3d 485, 494 (6th Cir. 2004); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939-40 (4th Cir. 1999). It was unconscionable for BYU to interpret its unilateral 1992 IP Policy to limit the pool of arbitrators to its "current faculty, staff, and students." This required the arbitrators to be selected from a pool of current BYU employees who depend on BYU for their paychecks, benefits, and retirements, and students who depend on BYU for their diplomas. Justice Lee's interpretation that the terms "University community" "of the 1992 Policy are best understood as a reference to current faculty, staff, and students," (ECF No. 362-1, pg. 4) excluded BYU former employees and alumni who no longer depend on BYU for their pay checks and diplomas. It was unconscionable for BYU to limit the pool of arbitrators to its "current faculty, staff, and students."

  Throughout this case, BYU has incorrectly framed the Trust's claims as merely a dispute under BYU's IP Policy between "developers" (Robertson, Simmons, and Xie), each arguing for a larger apportionment of the Developer Portion (45%) of the Settlement Funds from the Pfizer Litigation. If such were the case, then it may have been possible for the Trust to "locate a qualified, neutral arbitrator from this large pool" of "current BYU faculty, staff, and students," as this court

6

suggested. ECF No. 368, at 4. However, there is only one claim pending in this case. It is the Trust's cross claim against BYU, not against Dr. Simmons and not against Dr. Xie. In particular, the only pending claim in this case is the Trust's "Cross Claim for Breach of Contract Against Brigham Young University." ECF No. 301, pgs. 6-9. BYU is the only *opposing* party to this cross claim. *Id.* Thus, it was not possible for the Trust to "locate a qualified, neutral arbitrator from this large pool" of "current BYU faculty, staff, and students," because they are all evidently partial to the only *opposing* party—BYU.

V. **THERE IS NO DELEGATION CLAUSE GRANTING JUSTICE LEE AUTHORITY TO DECIDE ANYTHING.**

The Dispute Resolution clause does not "delegate" the Court's authority to decide threshold questions of arbitrability to BYU or Justice Lee. BYU claimed "Justice Lee's role [is] to assure procedural fairness" (ECF No. 363, at 4) and argued it has properly "delegated" its performance of contractual duties to him. ECF No. 363, at 13-14 (*citing* Restatement (Second) of Contracts § 318 (1981)). However, threshold arbitration questions are "for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *See AT&T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)(arbitrability issues decided by court unless delegation clause provides otherwise). "The 'clear and unmistakable' standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice." *Mitchell v. Wells Fargo Bank*, 280 F.Supp.3d 1261, 1287 (D. Utah 2017) (citations omitted). Here, the Dispute Resolution clause of the 1992 IP Policy provides no delegation, much less a clear and unmistakable delegation, granting BYU's Office of General Counsel, and by extension granting Justice Lee, exclusive control of arbitration procedure as to the selection of arbitration panel members. While Justice Lee may be the fairest person in the

world, he had no authority under the 1992 IP Policy to decide anything, much less the process for selecting arbitrators, because no authority is delegated by the Dispute Resolution clause.

## VI. CONCLUSION.

For the reasons noted, the Robertson Trust opposes BYU's Motion to Confirm Arbitration Decision and for Entry of Final Judgment ("Motion"). ECF No. 369. BYU interpreted the Dispute Resolution clause of its 1992 IP Policy to unconscionably require only current BYU faculty, staff and students may be selected for the arbitration panel. The Arbitration Decision was rendered by three current BYU employees who were evidently partial in favor of BYU because they depend on BYU for their paychecks, benefits, and retirements. Thus, the Court should not confirm the Arbitration Decision or enter final judgment. Further, the Court should sever and strike the arbitrator panel selection method from the Dispute Resolution clause, identify a pool of arbitrators from which the parties may select an impartial three-person panel, and order the parties to a second arbitration.

DATED this 20th day of January, 2026.

BY: /s/ *William Beard*
R. William Beard, Jr.
**SLAYDEN GRUBERT BEARD PLLC**

J. Ryan Mitchell
**MITCHELL BARLOW & MANSFIELD, P.C.**

ATTORNEYS FOR THE DONALD L. ROBERTSON TRUST

8

## CERTIFICATE OF SERVICE

I hereby certify that this 20th day of January, 2026, I caused the foregoing document to be filed via the Court's CM/ECF system, which transmitted notice of such filing to all counsel of record.

BY:  /s/ *William Beard*
     R. WILLIAM BEARD, JR.
     **SLAYDEN GRUBERT BEARD PLLC**