J. RYAN MITCHELL [9362]
RMITCHELL@MBMLAWYERS.COM
**MITCHELL BARLOW & MANSFIELD P.C.**
BOSTON BUILDING
9 EXCHANGE PLACE, SUITE 600
SALT LAKE CITY, UTAH 84111
Telephone: 801.998.8888

ATTORNEYS FOR DONALD L. ROBERTSON
TRUST

R. WILLIAM BEARD, JR.
PRO HAC VICE
WBEARD@SGBFIRM.COM
JOSEPH GRAY
PRO HAC VICE
JGRAY@SGBFIRM.COM
TECUAN FLORES
PRO HAC VICE
TFLORES@SGBFIRM.COM
**SLAYDEN GRUBERT BEARD PLLC**
401 Congress Ave., Suite 1650
Austin, Texas 78701
Telephone: 512.402.3556

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BEUS GILBERT PLLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRIGHAM YOUNG UNIVERSITY, WEILIN XIE, AND DANIEL SIMMONS<br><br>Defendants. | Case No. 2:12-cv-970-TS-CMR<br><br>**ROBERTSON TRUST'S MOTION TO VACATE ARBITRATION AWARD**<br><br>TED STEWART<br>United States District Judge<br><br>CECILIA M. ROMERO<br>United States Magistrate Judge |
| BEUS GILBERT PLLC,<br><br>Plaintiff,<br><br>vs.<br><br>DONALD ROBERTSON, BRIGHAM YOUNG UNIVERSITY, WEILIN XIE, AND DANIEL SIMMONS<br><br>Defendants. | |

The Robertson Trust moves the Court to vacate the final arbitration decision issued on December 12, 2025. All three arbitrators, Stephani Plamondon, Paul B. Savage, Ph.D., and Bryan Howell, are current employees of BYU and are therefore financially and professionally connected to BYU, who pays their paychecks, benefits, and retirements. Therefore, all three arbitrators are partial to BYU, which does not comply with governing law. Further, Professor Savage is partial not only to BYU but also to BYU's Department of Chemistry and Biochemistry and BYU's Simmons Cancer Research Center renamed after Dr. Daniel Simmons. Thus, the Court should vacate the final arbitration decision.

I.   BACKGROUND.

This arbitration proceeding relates to the development of COX-2 on BYU's campus during 1989-1992 and the COX-2 Pfizer litigation, where BYU alleged Pfizer misappropriated COX-2 inventions to make its Celebrex drug and breached its research agreement with BYU. It was widely publicized that Pfizer agreed to pay BYU $450 million to settle the Pfizer litigation. Ex. 1. BYU received ▇▇▇▇▇ in Net Revenue Subject to Allocation from the Pfizer litigation. Ex. 2, pg. 4. As prescribed in the BYU Intellectual Property Policy, BYU retained 55% or ▇▇▇▇▇ and the Developers shared 45% or ▇▇▇▇▇. *Id.* In particular, BYU was required to distribute the funds "as follows: (a) Developer(s)—45%; (b) College(s) of the developer(s)—27.5%; and (c) Technology Transfer or Creative Works Office—27.5%." ECF No. 301-3, pg. 17. In 2012, BYU paid nearly all of the Developer's Portion to Dr. Simmons and retained $1,000,000 for Dr. Xie, which he disputed. Dr. Simmons and Dr. Xie worked in BYU's Department of Chemistry and Biochemistry, so BYU distributed its portion to: the Department of Chemistry and Biochemistry—27.5% or ▇▇▇▇▇, and the Technology Transfer or Creative Works Office—27.5% or ▇▇▇▇▇. After Xie settled with BYU in 2015, Simmons returned a portion

1

of the funds he had received, and BYU distributed the Developer's Portion to: Dr. Daniel Simmons—███████████████; Dr. Weilin Xie—███████████████; and Dr. Donald Robertson—████████ Ex. 2, pg. 4.

As part of the settlement with Pfizer in 2012, Dr. Simmons demanded that "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." Ex. 3. In 2014, BYU changed the name of its Cancer Research Center "to the Simmons Center for Cancer Research in honor of renowned chemist and former Director Daniel L. Simmons." Ex. 4.

Dr. Robertson sued BYU for breach of the BYU Intellectual Property Policy, and the Court ordered the parties to arbitration under the policy. The Dispute Resolution clause of the 1992 IP Policy states:

> Any dispute involving the developers, the college, or the Technology Transfer Office which cannot be settled through informal discussions shall be submitted for mediation to the Associate Academic Vice President over Technology Transfer. If the dispute remains unresolved, either party may submit it for arbitration to a three-person panel to be selected from knowledgeable members of the University community as follows: one person selected by the developer, one person selected by the Associate Academic Vice President over Technology Transfer, and one person selected by the first two selectees. The arbitration process will be conducted in a fair manner in consultation with the Office of General Counsel as to procedure. The decision of the arbitration panel shall be in harmony with University policies and be binding on all parties.

ECF No. 301-1, pgs. 5-6. The Robertson Trust and BYU submitted the Trust's claim for mediation to the Associate Academic Vice President over Technology Transfer. However, a mediation held on February 24, 2023 did not resolve the Trust's claim. Thereafter, BYU submitted the unresolved claim for arbitration and disputes arose concerning: (1) whether arbitration panel members "selected from knowledgeable members of the University community" are limited to *current* BYU

2

faculty, staff, and students; and (2) whether Justice Thomas R. Lee may exclusively promulgate arbitration procedures.

Regarding who may serve on the arbitration panel, the Trust argued, "University community" includes BYU alumni and former BYU employees. ECF No. 362-4, pg. 1. BYU argued, "University community" means "current BYU faculty, administration, and staff." ECF No. 362-3, pg. 2.

BYU unilaterally delegated the "University community" question to its employee, Justice Lee. Regarding who may promulgate arbitration procedures, the 1992 IP Policy requires, "[t]he arbitration process will be conducted in a fair manner in consultation with the Office of General Counsel as to procedure." ECF No. 301-1, pg. 6. The Trust objected to Justice Lee having authority to decide arbitration issues because the Dispute Resolution clause has no delegation clause granting BYU exclusive power to promulgate arbitration procedures and Justice Lee is biased by his BYU employment. ECF No. 362-5, pg. 1. BYU has retained Justice Lee as "a designated agent for the Office of General Counsel" and contends he is in "position to resolve threshold procedural questions on behalf of the University." ECF No. 362-1, pg. 3; ECF No. 362-2, pg. 1. Justice Lee began his appointment as a tenured member of the BYU Law faculty on August 1, 2023. ECF No. 362-1, pg. 3.

Justice Lee determined the terms "University community" "of the 1992 Policy are best understood as a reference to current faculty, staff, and students." ECF No. 362-1, pg. 4.

In view of Justice Lee's interpretation of "University community," the Trust moved this court to bar enforcement of the dispute resolution clause as unconscionable because BYU unilaterally interpreted its 1992 IP Policy to require only current BYU faculty, staff, and students may be selected for the arbitration panel. ECF No. 362. BYU opposed the motion noting it "has

3

nearly 2,000 faculty members, more than 10,000 staff members, and more than 30,000 students." ECF No. 363, at 6. This court found "the Trust has not presented any evidence of likely bias—only assertion, which is not convincing," determined "the proposition that the Trust will be unable to locate a qualified, neutral arbitrator from this large pool strains credulity," and denied the motion. ECF No. 368, at 4.

In the arbitration, the Trust selected Stephani Plamondon (Bruce C. Hafen Professor of Law), BYU selected Paul B. Savage, Ph.D. (Reed M. Izatt Professor of Chemistry and Biochemistry), and these two arbitrators selected Bryan Howell (Industrial Design Professor).

The Trust objected to BYU's arbitrator selection because Professor Savage is faculty of BYU's Department of Chemistry and Biochemistry and "is a member of the faculty of the Simmons Center for Cancer Research, which may be a circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality." Ex. 5. "The Simmons Center is comprised of over forty-five BYU faculty members from five different colleges who all participate in cancer research and mentor student fellows." Ex. 4. Professor Savage admitted he is one of the forty-five BYU faculty members comprising the Simmons Center for Cancer Research, wherein he applied in 2014 (Ex. 6) and even today he is listed as a Simmons Center for Cancer Research faculty member. Ex. 7. At least one of Dr. Savage's students has received funding from the Simmons Center for Cancer Research. Ex. 6. The Trust sought additional information to discover the full extent of Dr. Savage's connection to Dr. Simmons and the Simmons Center for Cancer Research, but BYU refused to produce additional information. Ex. 8. BYU proceeded with the arbitration over the Trust's objections to Professor Savage. Ex. 9.

In the arbitration, BYU called Dr. Simmons to testify against Dr. Robertson.

4

## II.     VACATE STANDARDS.

Under federal law, "[i]n any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration-- … (2) where there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C.A. § 10. Utah law similarly provides for the Court to vacate and award. "Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if: … (b) there was: (i) evident partiality by an arbitrator appointed as a neutral arbitrator." U.C.A. 1953 § 78B-11-124.

The Supreme Court established in *Commonwealth Coatings* that an arbitrator's failure to disclose a material relationship with one of the parties can constitute 'evident partiality' requiring vacatur of the award. *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968)). "For an award to be set side, the evidence of bias or interest of an arbitrator must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Cline v. Chase Manhattan Bank USA*, 2009 WL 236696, *6 (D. Utah, 2009) quoting *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1146-47 (10th Cir. 1982).

> To determine if a party has established [evident] partiality, a court should assess four factors: "(1) the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceedings; (2) the directness of the relationship between the arbitrator and the party he is alleged to favor; (3) the connection of that relationship to the arbitrator; and (4) the proximity in time between the relationship and the arbitration proceeding.

*Three S Del., Inc. v. DataQuick Info. Sys., Inc.,* 492 F.3d 520, 530 (4th Cir. 2006) (quoting *ANR Coal Co. v. Cogentrix of N.C., Inc.,* 173 F.3d 493, 500 (4th Cir.1999), *cert. denied,* 528 U.S. 877, 120 S.Ct. 186, 145 L.Ed.2d 156 (1999)).

### III.  EVIDENT PARTIALITY IS ESTABLISHED WHERE THE ARBITRATORS ARE CURRENT BYU EMPLOYEES.

The arbitrators are evidently partial to BYU because they are current BYU employees. Stephani Plamondon (Bruce C. Hafen Professor of Law), Paul B. Savage, Ph.D. (Reed M. Izatt Professor of Chemistry and Biochemistry), and Bryan Howell (Industrial Design Professor) are members of BYU's faculty. The evidence of bias or interest of these arbitrators is "direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Cline*, 2009 WL 236696, *6. Current employment by a party is incompatible with arbitrator impartiality.

First, the extent and character of the personal interest, pecuniary or otherwise, of the arbitrators in the proceedings is significant. As members of the BYU faculty, Professors Plamondon, Savage and Howell have personal and pecuniary interests wherein they receive pay checks, benefits, and retirements directly from BYU. Ex. 10. Comprehensive benefits include health, dental, and vision insurance with flexible spending accounts. *Id.* The BYU TIAA 403b retirement plans include BYU matching for full-time faculty. *Id.* BYU provides faculty with Group Term Life (GTL) and AD&D insurance. *Id.* BYU provides its faculty with generous paid time off (vacation sick, holidays). *Id.* BYU provides faculty with tuition assistance to faculty themselves and dependents. *Id.* BYU provides faculty with wellness programs, and access to campus resources like the library and gym. *Id.* They have free on-campus parking. *Id.*

Dr. Robertson claimed that BYU breached its IP Policy by failing to pay him a portion of the Developer Portion. ECF No. 301, pg. 7. The Trust has no claims pending against Dr. Simmons or Dr. Xie. *Id.* If the Arbitration Decision found in Dr. Robertson's favor, BYU would have been required to pay, not Dr. Simmons or Dr. Xie. Thus, Professors Plamondon, Savage, and Howell in this scenario would have been ordering their current employer, BYU, to pay a substantial sum to

the Robertson Trust. Because BYU has finite resources, such an award would have degraded the university's ability to pay the arbitrators' salaries, benefits, and retirement contributions.

Second and third, the directness and connection of the relationships between Professors Plamondon, Savage and Howell and BYU is perfect and complete. Because BYU required the arbitrators to be selected from "current faculty, staff, and students" (ECF No. 362-1, pg. 4.), there are no intermediate business partners or family members through whom the relationships between BYU and these professors are established. Rather, the professors have their own direct relationships with BYU.

Fourth, the proximity in time between the relationships and the arbitration proceeding is coincident. Professors Plamondon, Savage and Howell were active BYU faculty before, during and after the arbitration proceeding, which is not surprising given that BYU required the arbitrators to be selected from "current faculty, staff, and students." ECF No. 362-1, pg. 4.

Thus, evident partiality of professors Plamondon, Savage and Howell in favor of BYU is "direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Cline*, 2009 WL 236696, *6.

**IV.   EVIDENT PARTIALITY IS ESTABLISHED WHERE PROFESSOR SAVAGE IS IN THE SAME DEPARTMENT WITH DR. SIMMONS AND IS A FACULTY MEMBER OF THE SIMMONS CENTER FOR CANCER RESEARCH.**

The Trust objected to BYU's arbitrator selection because Professor Savage is in BYU's Department of Chemistry and Biochemistry and "is a member of the faculty of the Simmons Center for Cancer Research, which may be a circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality." Ex. 5. Professor Savage's close professional relationship with BYU's Department of Chemistry and Biochemistry and BYU's Simmons Center for Cancer Research is incompatible with required impartiality of an arbitrator.

7

First, the extent and character of Professor Savage's personal and pecuniary interest in the arbitrary proceedings is significant. As the Reed M. Izatt Professor of Chemistry and Biochemistry, Professor Savage would have been fully aware that Pfizer paid $450 million to settle the Pfizer litigation and that BYU. Ex. 1. Professor Savage would have further understood BYU distributed its portion of the Pfizer Litigation funds to: the Department of Chemistry and Biochemistry—27.5% (███████), and the Technology Transfer or Creative Works Office—27.5% (███████). In particular, Professor Savage would have been aware that the Department of Chemistry and Biochemistry could use these funds to pay his students departmental stipends for research and scholarships. Further, "the Simmons Center is comprised of over forty-five BYU faculty members from five different colleges who all participate in cancer research and mentor student fellows." Ex. 4. Professor Savage admitted he is one of the forty-five BYU faculty members comprising the SCCR, wherein he applied in 2014 to be listed as a faculty member affiliated with the Simmons Center for Cancer Research. Ex. 6. Even today, Dr. Savage is listed as a Simmons Center for Cancer Research faculty member. Ex. 7. At least one of Professor Savage's students has received funding from the Simmons Center for Cancer Research. Ex. 6.

Thus, Professor Savage has a significant personal pecuniary interest in the arbitration proceedings, because if the Arbitration Decision required BYU to pay money to the Robertson Trust, BYU's Department of Chemistry and Biochemistry and/or the Simmons Center for Cancer Research would have less money to pay research stipends and scholarships to Professor Savage and his students.

Second and third, the directness and connection of the relationship between Professor Savage and BYU's Department of Chemistry and Biochemistry and the Simmons Center for Cancer Research is perfect and complete. There are no intermediate business partners or family

8

members through whom Professor Savage's relationship between BYU's Department of Chemistry and Biochemistry and the Simmons Center for Cancer Research is established. Rather, Professor Savage has his own direct relationship with BYU's Department of Chemistry and Biochemistry and the Simmons Center for Cancer Research.

Fourth, the proximity in time between Professor Savage's relationship and the arbitration proceeding is coincident. Professor Savage was an active BYU faculty before, during and after the Pfizer litigation and the arbitration proceeding. Further, Professor Savage became a member of the faculty of the Simmons Center for Cancer Research in 2014 and remains a faculty member today. Exs. 6 and 7. Thus, the proximity in time between Professor Savage's relationship and the arbitration proceeding is coincident.

Thus, evident partiality of Professor Savage in favor of BYU is "direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Cline*, 2009 WL 236696, *6.

## V.     CONCLUSION.

For the reasons noted, the Robertson Trust moves the Court to vacate the final arbitration decision issued on December 12, 2025.

DATED this 20th day of January, 2026.

BY:     /s/ *William Beard*
          R. William Beard, Jr.
          **SLAYDEN GRUBERT BEARD PLLC**

          J. Ryan Mitchell
          **MITCHELL BARLOW & MANSFIELD, P.C.**

ATTORNEYS FOR THE DONALD L. ROBERTSON TRUST

9

## CERTIFICATE OF SERVICE

I hereby certify that this 20th day of January, 2026, I caused the foregoing document to be filed via the Court's CM/ECF system, which transmitted notice of such filing to all counsel of record.

                                                                     BY:    /s/ *William Beard*
                                                                                R. WILLIAM BEARD, JR.
                                                                                SLAYDEN GRUBERT BEARD PLLC