Robert S. Clark (4015)
**PARR BROWN GEE & LOVELESS, P.C.**
101 S. 200 East Ste 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
rclark@parrbrown.com

Chad Pehrson (12622)
**KNH LLP**
50 West Broadway Ste 900
Salt Lake City Utah 84101
Telephone: (801) 994-4646
cpehrson@knh.law

Stephen M. Craig (12066)
(stephen_craig@byu.edu)
David M. Andersen (16352)
(david_andersen@byu.edu)
**BRIGHAM YOUNG UNIVERSITY**
A360 ASB
Provo, Utah 84602
Telephone: 801-422-4722

*Attorneys for Defendant Brigham Young University*

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BEUS GILBERT PLLC,**<br>　　　　Plaintiff,<br><br>　　v.<br><br>**BRIGHAM YOUNG UNIVERSITY, WEILIN XIE, DANIEL L. SIMMONS, AND DONALD L. ROBERTSON TRUST,**<br><br>　　　　Defendants. | **MEMORANDUM IN OPPOSITION TO TRUST'S MOTION TO VACATE**<br><br>Case No. 2:12-CV-970-TS-CMR<br><br>District Judge Ted Stewart |

　　　　The Trust's Motion to Vacate seeks to undo arbitration it participated in and lost. This Court compelled arbitration under BYU's 1992 IP Policy, rejecting the Trust's arguments that the arbitration clause was unconscionable or structurally biased. [ECF Nos. 356, 368.] The parties

1

proceeded to a full evidentiary hearing before three arbitrators selected under the Policy's terms. On December 12, 2025, the panel issued a detailed decision finding that Dr. Robertson made no qualifying contributions to the COX-2 discovery, failed to timely disclose any alleged contributions, and could not establish any breach by BYU. [ECF No. 369-1, Arb. Decision at 11-19.]

The Trust now seeks vacatur, alleging "evident partiality" based solely on the arbitrators' BYU employment—the exact structure mandated by the Policy and upheld by this Court. But judicial review of arbitration awards is "among the narrowest known to the law." *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001). Vacatur requires egregious misconduct, not disagreement with the result. *Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997); *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013); Utah Code Ann. § 78B-11-123.

The Trust cannot meet this burden. Its motion rests on arguments this Court already rejected, and no new facts or law justify revisiting those rulings. The Trust's conduct underscores this. For years, the Trust structured its litigation to avoid direct confrontation with Dr. Simmons and Dr. Xie—the two individuals whose testimony most directly contradicted its theory of entitlement.[1] The arbitration finally provided that confrontation, and the panel—after weighing

---

[1] It was the Trust's own strategic choices that created the posture it now attacks. When Dr. Robertson was joined to this action, he asserted cross-claims against both Dr. Simmons and Dr. Xie. (See Dkt. No. 112.) After Dr. Robertson passed away and the Trust was substituted as a party (Dkt. Nos. 146, 214), the Trust voluntarily dismissed all claims against Simmons and Xie and amended its pleading to assert a single breach-of-contract claim exclusively against BYU. (Dkt. No. 218; ECF No. 301.) The Trust itself has conceded that "there is only one claim pending in this case"—"the Trust's cross claim against BYU, not against Dr. Simmons and not against Dr. Xie." (ECF No. 371, at 7.) Having voluntarily narrowed the dispute to one solely against BYU, the Trust cannot claim surprise or prejudice from the arbitrator pool the 1992 IP Policy always contemplated. Additionally, the Trust's breach of contract theory against BYU rests on the premise

extensive evidence—found the Trust's case lacking. The law does not permit a party to participate in arbitration, lose, and then seek a do-over by attacking the tribunal.

Because the Trust cannot satisfy the demanding standard for vacatur, and because its motion rests on arguments already considered and rejected, the award must be confirmed.

## I. PROCEDURAL HISTORY RELEVANT TO VACATUR

### A. THE TRUST'S PATTERN OF RESISTANCE TO ARBITRATION

The Trust's Motion to Vacate is not prompted by newly discovered facts or misconduct. It is the latest iteration of a long-running effort to avoid arbitration under the 1992 IP Policy—and to undo the process after losing on the merits. From the outset, the Trust resisted arbitration despite the Policy's clear mandate for internal dispute resolution before a panel drawn from "knowledgeable members of the University community." [1992 Policy, ECF No. 301-1 at 5–6.] After this Court determined the 1992 Policy governed the dispute, the Trust opposed enforcement and sought to keep the case in federal court. When those efforts failed, the Trust attempted to reopen the litigation, urging the Court to bypass the arbitration mechanism.

In August 2023, the Trust moved to bar enforcement of the dispute-resolution clause as unconscionable, arguing that arbitration before University community panelists was structurally biased because BYU controlled the arbitrators' "paychecks." [ECF No. 362 at 5-8.] This Court denied that motion and ordered arbitration to proceed. The Trust then fully participated: it selected Professor Stephanie Plamondon (per the Policy's arbitrator-selection process), engaged in

---

that Robertson should be recognized as a developer under the 1992 Policy. The court should not allow the Trust to end-run around the Policy's dispute resolution clause based on the Trust's own strategic decision to drop claims against Simmons and Xie and solely pursue BYU.

3

discovery, submitted extensive pre-hearing briefing, presented evidence at a two-day evidentiary hearing on January 30–31, 2025, cross-examined witnesses including Dr. Simmons and Dr. Xie, and filed post-hearing briefs. [Arb. Decision at 9.] Only after the panel issued an adverse decision did the Trust revive its objections—this time styled as a motion to vacate.

### B. THE COURT'S PRIOR RULINGS FORECLOSE VACATUR

The Court's prior rulings — compelling arbitration under the 1992 Policy [ECF No. 356] and denying the Trust's unconscionability motion [ECF No. 368] — foreclose the arguments the Trust now advances. The law-of-the-case implications of those rulings are addressed in §III.B below.

## II. THE TRUST'S EVIDENT PARTIALITY THEORY FAILS.

The Trust's evident partiality claim fails for three reasons: (1) the alleged biases were fully known and disclosed; (2) the parties contractually waived any neutrality requirement by agreeing to the 1992 Policy's arbitrator-selection mechanism; and (3) no controlling authority treats mere employment or institutional affiliation as sufficient for vacatur under 9 U.S.C. § 10(a)(2).

### A. EMPLOYMENT ALONE DOES NOT CONSTITUTE EVIDENT PARTIALITY.

The Trust does not allege corruption, misconduct, undisclosed relationships, or improper conduct during arbitration. Instead, it equates employment with partiality, arguing that because Professors Plamondon, Savage, and Howell receive salaries from BYU, they were inherently predisposed to favor the University. [ECF No. 372 at 4–9.] The Trust reasons that because BYU has "finite resources," an award in the Trust's favor would have impaired the arbitrators' compensation. [*Id.* at 6–7.]

This theory has no support in governing law. Evident partiality requires concrete, non-speculative evidence of an actual conflict or an undisclosed material relationship sufficient to cause a reasonable person to conclude the arbitrator was biased. 9 U.S.C. § 10(a)(2); Utah Code Ann. § 78B-11-124(1)(b). In *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968), the arbitrator failed to disclose substantial, repeated consulting work for a party—approximately $12,000 in fees over several years. Id. at 146. Justice White's controlling concurrence clarified that the standard requires a "reasonable impression of partiality," not mere appearance of bias. *Id.* at 150. The Tenth Circuit requires evidence that is "direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1146–47 (10th Cir. 1982).

No court has held that employment by a party, standing alone, constitutes evident partiality—particularly where the relationship is disclosed and contractually mandated. Cases finding evident partiality involve materially different facts: undisclosed, repeated business dealings (*Commonwealth Coatings*, 393 U.S. at 146); an undisclosed father-son relationship with a party official (*Morelite Constr. Corp. v. N.Y.C. Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984)). Where parties agree to arbitrators with institutional ties, those ties do not constitute evident partiality absent additional misconduct. See *NFL Mgmt. Council v. NFL Players Ass'n*, 820 F.3d 527, 548 (2d Cir. 2016) (parties "can ask for no more impartiality than inheres in the method they have chosen"); *see also Delta Mine Holding Co. v. AFC Coal Props., Inc.*, 280 F.3d 815, 821–22 (8th Cir. 2001).

**B. THE PARTIES CONTRACTUALLY WAIVED NEUTRALITY.**

The 1992 IP Policy provided for dispute resolution by "knowledgeable members of the University community"—an internal, expert tribunal designed to resolve academic and intellectual-property disputes. [1992 Policy, ECF No. 301-1 at 5–6.] By initially agreeing to the Policy, then invoking the Policy as the basis for its breach of contract claim, and finally participating in arbitration under its mandatory clause, the Trust three times waived any right to arbitrators free of institutional ties.

Utah law expressly authorizes this arrangement: parties may agree that arbitrators "will not be neutral." Utah Code Ann. § 78B-11-112(4). Courts routinely enforce such agreements. See NFL Mgmt. Council, 820 F.3d at 548 (rejecting evident-partiality challenge where CBA designated the Commissioner as arbitrator of his own disciplinary decisions, holding parties "can ask for no more impartiality than inheres in the method they have chosen"); Delta Mine, 280 F.3d at 821; Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co., 307 F.3d 617, 620–21 (7th Cir. 2002). The Trust is also judicially estopped from repudiating the mechanism after years of invoking the 1992 Policy as an enforceable contract. See BYU's Reply in Support of Confirmation, filed concurrently herewith ("Reply ISO Confirmation"), at § III.C.

## C. FULL DISCLOSURE FORECLOSES THE TRUST'S CLAIM.

Evident partiality targets undisclosed material relationships—not affiliations that were known, disclosed, and contractually required. See *Commonwealth Coatings*, 393 U.S. at 149. Here, every relevant affiliation was unmistakable. The Trust knew panelists would be drawn from the University community. It selected Professor Plamondon as an arbitrator. BYU selected Professor Savage. Regarding Professor Savage, the Trust raised pre-arbitration questions as to his departmental affiliation (BYU Chemistry) and any connection to the Simmons Center for Cancer

6

Research. Disclosures were made. Professor Savage confirmed he had no personal, financial, or ongoing relationship with Dr. Simmons and no financial stake in the outcome. *See* Reply ISO Confirmation at § III.B & Exhs. A–C (detailing Professor Savage's written disclosures). The Trust then engaged fully in discovery, briefing, a two-day evidentiary hearing, and post-hearing submissions. [Arb. Decision at 9.]

There are no undisclosed relationships—no concealed consulting fees, no hidden family ties, no secret financial interests. A party may not claim evident partiality based on facts it knew, raised, and chose to litigate through final award. *See Delta Mine*, 280 F.3d at 821–22; *Sphere Drake*, 307 F.3d at 620–21. The Trust's reliance on *Three S Delaware, Inc. v. DataQuick Information Systems, Inc.*, 492 F.3d 520, 530 (4th Cir. 2007), is unavailing: that framework evaluates undisclosed relationships; it does not convert disclosed, contractually mandated employment into a disqualifying conflict.

Because the Trust identifies no concrete, non-speculative conflict, no undisclosed relationship, and no violation of the governing statute or case law, its evident partiality claim fails as a matter of law.

### III. THE TRUST IMPERMISSIBLY ATTACKS ARBITRABILITY.

The Trust's motion is not a genuine challenge to arbitrator misconduct but an attempt to relitigate the enforceability of the 1992 IP Policy's arbitration clause—an issue this Court has already resolved. By repackaging its rejected unconscionability arguments as "evident partiality," the Trust seeks to achieve through FAA § 10 what it could not achieve through direct attack. This collateral attack is barred by law-of-the-case doctrine and principles of finality. *See Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779–80 (10th Cir. 1998).

### A. THE TRUST REPACKAGES ITS FAILED UNCONSCIONABILITY ARGUMENT.

The Trust's vacatur motion identifies no defect that arose during arbitration. The factual premise, alleged unfairness, and requested remedy are identical to its prior unconscionability challenge. Then and now, the Trust argues that arbitration before BYU-affiliated arbitrators is inherently unfair. [*Compare* ECF No. 372 at 4–9 with ECF No. 362 at 5–8.] Then and now, the Trust asserts that no BYU-affiliated panel can be impartial—even citing the same cases. [*Compare* ECF No. 362 at 4–5 (citing *Hooters of America, Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999), and *McMullen v. Meijer, Inc.*, 355 F.3d 485 (6th Cir. 2004)) with ECF No. 371 at 6–7 and ECF No. 372.] Its 2023 motion sought to bar enforcement; its current motion seeks vacatur and re-arbitration before a "neutral" forum. [ECF No. 371 at 6, 9.]

### B. LAW OF THE CASE FORECLOSES RECONSIDERATION.

This Court has twice rejected the theories the Trust now advances. In August 2022, the Court compelled arbitration under the 1992 Policy. [ECF No. 356 at 7–10.] In November 2023, the Court expressly denied the Trust's unconscionability motion, finding "no evidence of likely bias—only assertion . . . ." [ECF No. 368 at 4.] Under the law-of-the-case doctrine, a court's prior ruling controls subsequent stages absent an intervening change in controlling law, newly discovered evidence, or clear error working manifest injustice. *Arizona v. California*, 460 U.S. 605, 618 (1983); *Homans v. City of Albuquerque*, 366 F.3d 900, 904 (10th Cir. 2004). None of these exceptions applies. The Trust cites the same employment relationships it challenged before arbitration. And no manifest injustice exists—the Trust received the process provided for under the 1992 IP Policy. The Trust participated fully and lost on the merits. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008).

8

**IV. THE TRUST'S OPPOSITION IS A MERITS APPEAL IN DISGUISE.**

Although framed as an attack on structural integrity, the Trust's arguments are disagreements with the panel's factual findings and evidentiary assessments—precisely the kind of second-guessing the FAA forbids. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37–38 (1987) (courts "have no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim").

The panel found that Dr. Robertson did not contribute to sequencing the COX-2 gene, that his alleged contributions to a purported "testing system" were insufficient to establish developer status, and that he failed to timely disclose any developer claim as required by the 1992 IP Policy. [Arb. Decision at 11–18.] Each conclusion rested on detailed credibility determinations. The panel credited Dr. Xie's testimony that he independently developed the unspliced intron hypothesis and sequenced the COX-2 gene. [*Id.* at 12–13.] It found persuasive the testimony of both Dr. Simmons and Dr. Xie that Dr. Robertson's alleged 5' RACE experiments were not used to obtain the COX-2 sequence. [*Id.* at 12.] And it relied on Dr. Robertson's own sworn statements—including his Pfizer litigation testimony that "I had no financial claim to anything there because it was Dan's discovery"—in concluding Robertson had disclaimed developer status. [Id. at 6.]

The Trust challenges each determination, arguing the panel should have credited different witnesses and drawn different inferences. For example, the Trust points to Dr. Robertson's lab notebook containing the word "intron" as proof he originated the unspliced intron hypothesis. The panel considered that evidence and found it unpersuasive, noting that Robertson had previously testified that Xie originated the unspliced intron hypothesis, and also noting the disputed notebook page "features several styles of writing" and that "it is not clear when the word 'intron' was written

9

or who wrote on the page." [Arb. Decision at 13.] That is a quarrel with the panel's judgment—not a statutory ground for vacatur.

Judicial review "does not sanction a broad re-examination of an arbitrator's findings." Ormsbee, 668 F.2d at 1146. Even if a Court believed the panel erred, that belief would not permit vacatur. See Oxford Health Plans, 569 U.S. at 569.

## V. THE TRUST CANNOT SHOW PREJUDICE FROM ANY ALLEGED PARTIALITY.

The motion further fails because the Trust cannot demonstrate actual prejudice from its assertions of partiality. The moving party must establish that the alleged bias materially affected the outcome or deprived it of a fair hearing. See Denver & Rio Grande, 119 F.3d at 850; Scandinavian Reins. Co. v. Emp'rs Reins. Corp., 472 F. App'x 806, 812 (10th Cir. 2012).

### A. THE TRUST RECEIVED A FULL AND FAIR HEARING.

As detailed in BYU's Reply in Support of Confirmation at §§II.B–C, the arbitration afforded every procedural safeguard contemplated by the 1992 Policy — equal time, full cross-examination, documentary submissions, and post-hearing briefing — and the panel issued a detailed, reasoned decision engaging the Trust's arguments and citing specific evidence. The Trust identifies no procedural deficiency or restriction on its presentation. See 9 U.S.C. § 10(a)(3).

### B. THE TRUST LOST BECAUSE IT FAILED TO PROVE ITS CASE

The Trust's theory—that no BYU-affiliated panel would have ruled against BYU—is belied by the arbitration record. Dr. Robertson testified in the Pfizer litigation that he had "no financial claim to anything there because it was Dan's [Simmons] discovery." [Arb. Decision at 6.] He stated in sworn declarations that Dr. Xie "independently identified and sequenced" COX-2 and that Xie's work was "most crucial." [Id.] The Trust conceded in closing argument that the 3T3

cells used in the relevant experiments were not Robertson's. [*Id.* at 14–15.] Dr. Xie and Dr. Simmons both testified—subject to cross-examination—that Robertson did not contribute to the discovery. [*Id.* at 12.] The panel's decision reflects straightforward application of the evidence.

The Trust identifies no ruling, procedural decision, or evidentiary exclusion that prejudiced its rights, nor any conduct by the panel suggesting bias—no prejudicial statements, no unequal treatment, no refusal to consider evidence. Absent a showing that the alleged partiality actually influenced the result, the motion fails. See *Denver & Rio Grande*, 119 F.3d at 850.

## VI. VACATUR WOULD UNDERMINE ARBITRATION FINALITY AND REWRITE THE PARTIES' AGREEMENT.

The FAA and UAA reflect a strong federal policy favoring arbitration finality. See *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). The narrow vacatur grounds exist to prevent losing parties from treating arbitration as a preliminary round before judicial review. See *Hall St. Assocs.*, 552 U.S. at 588. Permitting vacatur based on disclosed, contractually mandated employment relationships would gut that finality and transform every internal arbitration into a gamble: participate fully, keep the award if you win, attack the tribunal if you lose.

The Trust's theory would also require courts to rewrite bargained-for dispute resolution mechanisms. The 1992 IP Policy specified arbitration before "knowledgeable members of the University community." [1992 Policy, ECF No. 301-1 at 5–6.] The Trust invoked that Policy to pursue its claims. It cannot now ask this Court to replace the contractually specified arbitrator pool with one of its own design. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) ("Courts have no authority to redesign the agreement struck between the contracting parties.").

## VII. CONCLUSION

The Trust has not established any statutory ground for vacatur. Its "evident partiality" claim rests entirely on the arbitrators' employment by BYU—a structural feature that was contractually mandated, fully disclosed, and expressly upheld by this Court before arbitration began. Employment alone does not constitute evident partiality. The Trust received exactly the arbitration process contemplated by the 1992 IP Policy. It selected one arbitrator, engaged in discovery, submitted extensive briefing, presented evidence at a two-day hearing, cross-examined adverse witnesses, and filed post-hearing briefs. The panel issued a detailed, 21-page decision finding that the Trust failed to prove contribution, timely disclosure, or breach. The Trust lost because it failed to prove its case—not because of bias.

Respectfully submitted, this 3rd day of February 2026.

**PARR BROWN GEE & LOVELESS, PC**
**KNH LLP**

*/s/ Chad Pehrson*
Robert S. Clark
Chad Pehrson
*Attorneys for BYU*

## CERTIFICATION OF COMPLIANCE WITH DUCivR 7-1(q)

I certify that this memorandum complies with the applicable length requirements of DUCivR 7-1(q). According to the word-processing system used to prepare this filing, this memorandum contains **3099** words, excluding the caption, table of contents, table of authorities, signature block, certificate of service, and any exhibits or attachments.

DATED this 3rd day of February 2026.

/s/ Chad Pehrson

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of February 2026, I caused the foregoing document to be filed via the Court's CM/ECF system, which transmitted notice of such filing to all counsel of record.

BY: */s/Chad Pehrson*
　　Chad Pehrson
　　**KNH LLP**