Robert S. Clark (4015)
PARR BROWN GEE & LOVELESS, P.C.
101 S. 200 East Ste 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
rclark@parrbrown.com

Chad Pehrson (12622)
**KNH LLP**
50 West Broadway Ste 900
Salt Lake City Utah 84101
Telephone:  (801) 994-4646
cpehrson@knh.law

Stephen M. Craig (12066)
(stephen_craig@byu.edu)
David M. Andersen (16352)
(david_andersen@byu.edu)
**BRIGHAM YOUNG UNIVERSITY**
A360 ASB
Provo, Utah 84602
Telephone: 801-422-4722

*Attorneys for Defendant Brigham Young University*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BEUS GILBERT PLLC,**<br>Plaintiff,<br><br>v.<br><br>**BRIGHAM YOUNG UNIVERSITY, WEILIN XIE, DANIEL L. SIMMONS, AND DONALD L. ROBERTSON TRUST,**<br><br>Defendants. | **REPLY IN SUPPORT OF MOTION TO CONFIRM ARBITRATION DECISION AND FOR ENTRY OF FINAL JUDGMENT**<br><br>Case No. 2:12-CV-970-TS-CMR<br><br>**District Judge Ted Stewart** |

**I. INTRODUCTION**

Judicial review of an arbitration award is "among the narrowest known to the law." *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001). Courts do not reconsider the merits, reweigh evidence, reassess credibility, or correct alleged errors. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568–69 (2013) ("The arbitrator's construction holds, however good, bad, or ugly."). Confirmation is mandatory unless the challenger establishes one of the limited, exclusive grounds for

vacatur. 9 U.S.C. §§ 9–10; Utah Code Ann. § 78B-11-123; *Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997). Courts may not expand those grounds by judicial invention. *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008).

  That presumption applies with full force here. This Court compelled arbitration under BYU's 1992 IP Policy. The panel received extensive briefing, conducted an evidentiary hearing, and issued a final, reasoned decision. Nothing in the Trust's Opposition satisfies the demanding standard required to disturb that result. Instead, the Opposition mounts a merits-based attack on the arbitration outcome—an approach foreclosed as a matter of law. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (a court "may not overturn an arbitration award simply because it disagrees with the arbitrator's reasoning or result"). Even credited at face value, the Trust's allegations identify no statutory defect permitting vacatur—no corruption, fraud, evident partiality, misconduct, or excess of authority. 9 U.S.C. § 10(a); *see also* Utah Code Ann. § 78B-11-124(1). Instead, the Trust seeks judicial re-litigation of issues aired and resolved in arbitration.

  Confirmation is not discretionary—it is mandatory. The arbitration complied with the parties' agreement, the Court's prior orders, and the procedural requirements; thus the Court "must grant" confirmation. 9 U.S.C. § 9; Utah Code Ann. § 78B-11-123 ("the court shall confirm an award"). The Opposition offers no lawful basis to conclude otherwise.

**II. PROCEDURAL POSTURE AND LAW OF THE CASE**

  **A. Prior Court Orders Compelled Arbitration Under the 1992 IP Policy.**

  This Court has already twice addressed—and twice rejected—the Trust's attempts to avoid this arbitration. In its August 24, 2022 Order, the Court held that the 1992 IP Policy governs the Trust's claims because "Dr. Robertson was employed with BYU from 1980 to 1995, which binds him to the 1992 Policy." [ECF No. 356 at 7–8.] The Court further held that the Policy's arbitration

2

provision was enforceable and mandatory, finding that its dispute resolution clause—covering "[a]ny dispute involving the developers, the college, or the Technology Transfer Office"—uses "expansive language" that "presumably . . . include[s] all issues that touch matters within that language." [*Id.* at 10.] The Court accordingly stayed proceedings and ordered "that the parties must follow the procedures discussed in the 1992 Policy to allocate the Settlement Fund." [*Id.*]

Subsequently, the Trust moved to bar enforcement of the dispute resolution clause as unconscionable, arguing that requiring arbitrators from current BYU faculty, staff, and students was unconscionable and that BYU exercised improper control over arbitration procedures through Justice Thomas Lee. [ECF No. 362 at 4–7; ECF No. 371 at 4–8.] In its November 28, 2023 Order, the Court squarely rejected those arguments, finding that "the Trust has not presented any evidence of likely bias—only assertion, which is not convincing," and that "the proposition that the Trust will be unable to locate a qualified, neutral arbitrator from this large pool strains credulity" given BYU's nearly 2,000 faculty, 10,000 staff, and 30,000 students. [ECF No. 368.] The Court found no evidence that the procedural framework created bias or unfairness and ordered arbitration to proceed as structured. [*Id.*]

The Trust now repackages these identical arguments. The law-of-the-case doctrine forecloses this maneuver: "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *see also Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007). This Court has already decided that the dispute resolution clause is enforceable, the arbitrator-selection method is not unconscionable, and the Trust's bias assertions were unconvincing. [ECF Nos. 356, 368.] Those rulings govern subsequent proceedings, including confirmation. The Trust identifies no intervening change in controlling law and no clear error

3

warranting departure. Its opposition rests on the same structural arguments—BYU-employed arbitrators, the "University community" limitation, Justice Lee's procedural role—that the Court already considered and rejected. [ECF Nos. 356, 368.] BYU's concurrently filed Memorandum in Opposition to the Trust's Motion to Vacate ("Opp. to Vacate") addresses these repackaged arguments. *See* Opp. to Vacate at §§I, III.

**B. The Arbitration Proceeded Exactly as Ordered by this Court.**

Subsequent to this Court's orders, the parties proceeded to arbitration under the 1992 IP Policy's dispute resolution procedures. As directed by the Policy, a three-person arbitration panel was constituted from "knowledgeable members of the University community." The Trust selected Professor Stephanie Plamondon of the BYU Law School. BYU selected Professor Paul B. Savage of the Department of Chemistry and Biochemistry. These two arbitrators jointly selected Professor Bryan Howell as the third panel member. [ECF No. 369-1, Arb. Decision at 9.] Each arbitrator brought relevant academic expertise, and the selection process followed precisely the method prescribed by the Policy: "one person selected by the developer, one person selected by the Associate Academic Vice President over Technology Transfer, and one person selected by the first two selectees." [1992 Policy, ECF No. 301-1 at 5–6.]

The Panel conducted a comprehensive evidentiary hearing over two days on January 30–31, 2025. [Arb. Decision at 9.] Both parties received equal time—five and a half hours each—to present evidence, examine witnesses, and deliver opening and closing statements. [*Id.*] Witnesses testified under oath, including Dr. Simmons and Dr. Xie, and transcripts from both days were

4

recorded and shared with all parties. [*Id.*] The Trust had full opportunity to present its case, cross-examine adverse witnesses, and submit documentary evidence in support of its claims.[1]

### C. The Panel Issued a Final Reasoned Decision, Which the Trust Disagrees With.

On December 12, 2025, the Panel issued a detailed, 21-page written decision resolving all claims. The Panel "spent many hours, both individually and collectively, reviewing and discussing hundreds of pages of documents, asking and answering questions, and seeking clarity on the issues." [Arb. Decision at 10.] The decision reflected "a consensus stemming from multiple deliberations and a joint drafting of this document." [*Id.*] The Panel's decision addressed the Trust's breach-of-contract claims and found the Trust failed on multiple, independent grounds: (1) the Trust did not establish that Dr. Robertson "performed under the Policy by contributing to the COX-2 invention"; (2) the Trust did not establish that Dr. Robertson "performed under the Policy by timely disclosing his alleged contributions"; and (3) the Trust did not establish that "BYU breached the Policy." [*Id.* at 11.]

### III. THE TRUST'S STRUCTURAL BIAS ARGUMENT FAILS.

The Trust's opposition rests on a theory of structural bias: that the arbitration was fundamentally unfair because all three arbitrators were BYU employees. In other words, the Trust criticizes the 1992 IP Policy's requirement that arbitrators be "knowledgeable members of the University community." [ECF No. 371 at 2–4, 6–7; 1992 Policy, ECF No. 301-1 at 5–6.] The Trust further asserts that Professor Paul Savage harbored particularized bias based on his affiliation with the Department of Chemistry and Biochemistry and the Simmons Center for

---

[1] The arbitration included multiple rounds of written submissions. The parties exchanged opening briefs in December 2024 and January 2025, followed by post-hearing briefs in February and March 2025. [Arb. Decision at 9.] The Trust submitted an opening brief, a reply brief, and a post-hearing brief, together with supporting exhibits and declarations.

5

Cancer Research. [*Id.* at 5, 8–9.] On these grounds, the Trust asks the Court to vacate the award and order a second arbitration before a forum such as the AAA or JAMS. [*Id.* at 9.]

### A. This Court Previously Rejected the Same Arguments.

As discussed in §II.A, this Court has twice rejected the Trust's structural bias theory on the same factual and legal premises the Trust advances here. [*Compare* ECF No. 362 at 4–5 *with* ECF No. 371 at 6–7.] No intervening change in law, newly discovered evidence, or clear error warrants reconsideration. *See McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1034–35 (10th Cir. 2000); see also Opp. to Vacate at § III.A.

### B. The Trust Identifies No Conduct During Arbitration Evidencing Actual Bias.

Every fact underlying the Trust's theory—the "University community" limitation, the arbitrators' employment status, and Professor Savage's departmental affiliations—was known to the Trust before arbitration began. What the Trust does not identify is any conduct *during* arbitration evidencing actual bias. No arbitrator made prejudicial statements. No evidence was excluded. No evidentiary ruling by the Panel disadvantaged the Trust. The 21-page decision engages the Trust's arguments in detail, contains extensive factual findings supported by citations to testimony and documentary evidence, and reflects a reasoned assessment of the record. [Arb. Decision at 10-19.] An adverse outcome is not evidence of bias.

As to Professor Savage, on February 14, 2024, the Trust communicated to Justice Thomas Lee that Professor Paul Savage "is a member of the faculty of the Simmons Center for Cancer Research" and asserted that this affiliation "may be a circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality," requesting further disclosures regarding any financial support connected to the Simmons Center. (Ex. A, Communication from R. William Beard to Thomas Lee). In response to this concern, Professor Savage explained in writing that he

had no direct financial ties to the Simmons Center or to Dr. Simmons, that he had never received funding or compensation from either, and that his only connection was a long-past application to be listed as an affiliate so that students could apply for research fellowships. (Ex. B, Communications Attaching Prof. Savage Declaration; *see also* Exh. C (further emails)). The governing legal standard requires evidence that is "direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982). As set forth more fully in BYU's Opposition to Vacate at §II.A, no court has held that disclosed, contractually mandated employment constitutes evident partiality.

### C. Full Participation in Arbitration Forecloses the Trust's Post-Award Challenge

After this Court denied its unconscionability motion, the Trust did not withdraw its claims. Instead, it selected an arbitrator, presented evidence, and sought a favorable outcome. A party cannot knowingly participate in arbitration and then disavow the process after an unfavorable result. *See Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1148–49 (10th Cir. 2007); *Republic of Argentina v. BG Grp. PLC*, 572 U.S. 25, 37–38 (2014). The Trust is also estopped because it has spent years invoking the 1992 IP Policy as an enforceable contract entitling it to developer compensation. It cannot claim the Policy's benefits while repudiating its dispute-resolution mechanism when the result proves unfavorable. *See Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000).

## IV. THE COURT MUST DEFER TO THE ARBITRATION AWARD

Judicial review of an arbitration award "is among the narrowest known to the law." *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001). Vacatur is available only in the "exceedingly rare" case where a statutory ground is established. *THI of N.M. at Vida Encantada, LLC v. Lovato*, 864 F.3d 1080, 1084 (10th Cir. 2017). Those grounds are exclusive; courts may not

supplement them to correct alleged factual or legal errors. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584–85 (2008); Utah Code Ann. § 78B-11-123; *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 947 (Utah 1996). Parties who agree to arbitration "trade[] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Three principles follow from this deferential posture, each fatal to the Trust's opposition.

First, courts do not reweigh evidence. The panel's assessment of the record—what to credit, what weight to assign, what inferences to draw—is beyond judicial review. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013); *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36–38 (1987). Second, courts do not review credibility determinations. Those judgments are "virtually unreviewable." *Misco*, 484 U.S. at 36; *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam). Third, courts do not correct alleged errors of law. Even if an arbitrator misapplies the governing standard—a contention the Trust does not meaningfully advance—that error provides no basis for vacatur. *Hall Street*, 552 U.S. at 584–85; *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 671 (2010).

The Trust's opposition falls squarely within these foreclosed categories. It challenges the Panel's findings regarding Dr. Robertson's role, disputes the resulting allocation of the Settlement Fund, and re-litigates the scope and operation of the 1992 IP Policy. [ECF No. 371 at 6-8.]  These are disagreements with how the panel weighed the evidence and assessed witness credibility—not grounds for vacatur. The Trust does not identify any statutory defect under 9 U.S.C. § 10(a) or Utah Code Ann. § 78B-11-124(1). It asks this Court to do precisely what the FAA and UAA prohibit: retry the merits of a dispute decided by an arbitration panel.  The Opp. to Vacate addresses the Trust's specific merits-based contentions—including its arguments

8

regarding the lab notebook, the unspliced intron hypothesis, and the 5' RACE experiments—and demonstrates that each amounts to a quarrel with the panel's evidentiary and credibility determinations, not a statutory ground for vacatur. See Opp. to Vacate at §§IV–V.

## V. THE PANEL'S DECISION IS FINAL, AND NO STATUTORY BASIS EXISTS TO REFUSE CONFIRMATION.

The panel resolved the precise dispute submitted to it and issued a final, reasoned award. It found the Trust failed to establish performance under the 1992 IP Policy, failed to prove any breach by BYU, and failed to establish entitlement to any relief. [Arb. Decision. at 21.]

The panel's decision rested on three independently sufficient conclusions. First, the Trust failed to establish Dr. Robertson "performed under the Policy by contributing to the COX-2 invention." [Arb. Decision at 11.] The panel rejected each theory of contribution: the alleged 5' race experiments were not used in sequencing (and the Trust conceded the relevant 3T3 cells were not Robertson's), *id.* at 12, 14–15; Dr. Robertson did not originate or meaningfully contribute to the unspliced intron hypothesis, *id.* at 12–13; and his involvement with the RS-2 cell line was insufficient to confer developer status, *id.* at 15–16. Second, the Trust failed to establish Dr. Robertson "performed under the Policy by timely disclosing his alleged contributions." [*Id.* at 17–18.] The Policy requires disclosure "upon realization that [work] has commercial potential" and "prior to public disclosure or submission for publication." [*Id.* at 10.] Dr. Robertson's first disclosure came in 2014—more than twenty years after the PNAS paper and two years after the Pfizer settlement. [*Id.* at 18.] Third, the Trust failed to establish "BYU breached the Policy." [*Id.* at 18–19.] BYU reasonably relied on Dr. Robertson's own statements disclaiming developer status—including his sworn testimony in the Pfizer litigation that he had "no financial claim to anything there because it was Dan's discovery." [*Id.* at 6.] These findings,

9

and the Trust's inability to demonstrate prejudice from any alleged partiality, are addressed more fully in the Opp. to Vacate at §§IV–V.

Against this record, the Trust has not established any statutory ground for vacatur under 9 U.S.C. § 10(a) or Utah Code Ann. § 78B-11-124(1). The Trust does not allege corruption, fraud, or undue means. Its evident-partiality claim rests entirely on the arbitrators' BYU employment—a structural feature this Court already approved and which, standing alone, does not satisfy the standard requiring evidence "direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Ormsbee Dev. Co. v. Grace,* 668 F.2d 1140, 1147 (10th Cir. 1982); *see also NFL Mgmt. Council v. NFL Players Ass'n,* 820 F.3d 527, 548 (2d Cir. 2016) (rejecting evident-partiality challenge where CBA designated the Commissioner as arbitrator of his own disciplinary decisions, holding parties "can ask for no more impartiality than inheres in the method they have chosen"); *Delta Mine Holding Co. v. AFC Coal Props.*, 280 F.3d 815, 821 (8th Cir. 2001) (parties "can ask for no more impartiality than inheres in the method they have chosen"). The Trust does not allege misconduct—it received a full two-day hearing, equal time for presentation, and multiple rounds of briefing. And it does not contend the panel exceeded its authority or failed to issue a final award.

The Trust's requested relief—re-arbitration—is independently foreclosed. Neither the FAA nor the UAA authorizes confirmation, vacatur, or modification—not re-arbitration before different arbitrators because the first panel ruled unfavorably. See 9 U.S.C. §§ 9–11. Nor can courts rewrite the parties' arbitration agreement by substituting AAA or JAMS for the contractually specified arbitrator-selection method. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 683 (2010) (courts "have no authority to redesign the agreement struck between the contracting parties"). That request also conflicts with this Court's prior orders holding the

1992 IP Policy's dispute-resolution clause enforceable and its arbitrator-selection method not unconscionable. [ECF Nos. 356, 368.] Absent any statutory ground, confirmation is mandatory.

## VI. CONCLUSION

The Trust received exactly the arbitration process contemplated by the 1992 IP Policy and compelled by this Court. A duly constituted panel conducted a full evidentiary hearing, considered extensive briefing, and issued a detailed, reasoned decision resolving all claims in BYU's favor. The Trust lost—not because of structural bias, but because it failed to prove that Dr. Robertson contributed to the COX-2 invention, failed to prove he timely disclosed any such contribution, and failed to prove BYU breached the Policy.

The Trust's opposition does not identify any statutory ground for vacatur. It offers no evidence of corruption, fraud, or misconduct. Its evident-partiality claim rests on the same structural arguments this Court rejected before arbitration began, and the Trust points to nothing that occurred during the proceedings to suggest actual bias. What remains is dissatisfaction with the outcome—a ground not recognized by governing law. Thus, under established law, the Court "must grant" confirmation. The Trust's opposition offers no lawful basis to conclude otherwise.

Respectfully submitted, this 3rd day of February 2026.

**PARR BROWN GEE & LOVELESS, PC**
**KNH LLP**

*/s/ Chad Pehrson*
Robert S. Clark
Chad Pehrson
*Attorneys for BYU*

**CERTIFICATION OF COMPLIANCE WITH DUCivR 7-1(q)**

I certify that this memorandum complies with the applicable length requirements of DUCivR 7-1(q). According to the word-processing system used to prepare this filing, this memorandum contains exactly 3100 words, excluding the caption, table of contents, table of authorities, signature block, certificate of service, and any exhibits or attachments.

DATED this 3rd day of February 2026.

/s/ Chad Pehrson

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of February 2026, I caused the foregoing document to be filed via the Court's CM/ECF system, which transmitted notice of such filing to all counsel of record.

                BY: */s/Chad Pehrson*
                     Chad Pehrson
                     **KNH LLP**