J. Ryan Mitchell [9362]
rmitchell@mbmlawyers.com
**Mitchell Barlow & Mansfield P.C.**
Boston Building
9 Exchange Place, Suite 600
Salt Lake City, Utah 84111
Telephone: 801.998.8888

Attorneys for Donald L. Robertson
Trust

R. William Beard, Jr.
PRO HAC VICE
wbeard@sgbfirm.com
Joseph Gray
PRO HAC VICE
jgray@sgbfirm.com
Tecuan Flores
PRO HAC VICE
tflores@sgbfirm.com
**Slayden Grubert Beard PLLC**
401 Congress Ave., Suite 1650
Austin, Texas 78701
Telephone: 512.402.3556

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BEUS GILBERT PLLC,<br><br>Plaintiff,<br><br>vs.<br><br>BRIGHAM YOUNG UNIVERSITY, WEILIN XIE, AND DANIEL SIMMONS<br><br>Defendants. | Case No. 2:12-cv-970-TS-CMR<br><br><br>**ROBERTSON TRUST'S REPLY REGARDING MOTION TO VACATE ARBITRATION AWARD** |
| BEUS GILBERT PLLC,<br><br>Plaintiff,<br><br>vs.<br><br>DONALD ROBERTSON, BRIGHAM YOUNG UNIVERSITY, WEILIN XIE, AND DANIEL SIMMONS<br><br>Defendants. | TED STEWART<br>United States District Judge<br><br>CECILIA M. ROMERO<br>United States Magistrate Judge |

The Robertson Trust replies to BYU's opposition (ECF No. 375). The Trust moved to vacate the arbitration award under the "evident partiality" provision of Federal Arbitration Act, 9 U.S.C.A. § 10(a)(2). BYU opposed this motion by citing cases unrelated to this code section and unsupported by actual case authority. BYU's misstatements of law and case citations appear to be AI generated hallucinations BYU failed to cite check.[1]

## I.    BYU MISTATES THAT VACATUR REQUIRES "EGREGIOUS MISCONDUCT."

BYU argues, "[v]acatur requires egregious misconduct, not disagreement with the result" and string cites (1) *Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 849 (10th Cr. 1997); (2) *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013); and (3) Utah Code Ann. § 78B-11-123. ECF No. 375, at 2. However, this misstatement of the law appears to be an AI generated hallucination BYU failed to cite check because no authority supports it and BYU's cited authority is disconnected and unrelated to it.

First, the *Denver & Rio Grande W. R.R.* case does not contain the terms "egregious" or "misconduct" anywhere in the document and does not discuss the conduct of the arbitrators. Rather, in the *Denver & Rio Grande W. R.R.* case, the motion to vacate argued the award was "based on an agreement which violates public policy, and this invokes one of the judicially created justifications for vacating an arbitration award." *Denver & Rio Grande W. R.R.*, 119 F.3d at 850. The court rejected the argument without implicating one of the vacatur reasons enumerated in the Federal Arbitration Act, 9 U.S.C.A. § 10, and without saying anything about whether "egregious misconduct" is required for vacatur. *Id.*

---

[1] BYU's brief appears to have been generated using ClearBrief artificial intelligence software. See www.clearbrief.com.

Second, the *Oxford Health Plans* case also does not contain the terms "egregious" or "misconduct" anywhere in the document and does not discuss "evident partiality" or 9 U.S.C.A. § 10(a)(2). Rather, this case considers whether the arbitrator "exceeded his powers" under a different code section, 9 U.S.C.A. § 10(a)(4). *Oxford Health Plans*, 569 U.S. at 564. Nothing in this case relates to the standard for "evident partiality" of the Federal Arbitration Act, 9 U.S.C.A. § 10(a)(2), nor does it say anything about whether "egregious misconduct" is required for vacatur. *Id.*

Third, Utah Code Ann. § 78B-11-123 is the Utah statute related to "Confirmation of award," not "vacatur." This code section does not contain the terms "egregious" or "misconduct" anywhere in the statute and it does not discuss "evident partiality." The only mention of vacatur is that "[t]he court shall issue a confirming order unless the award . . . is vacated pursuant to Section 78B-11-124." *Id.*

Thus, BYU's misstatement that "[v]acatur requires egregious misconduct, not disagreement with the result" and string cite appear to be an AI generated hallucination that BYU failed to cite check.

## II.  BYU MISTATES THAT VACATUR LAW REQUIRES A SHOWING OF PREJUDICE FROM PARTIALITY THAT "MATERIALLY AFFECTED" AND "ACTUALLY INFLUENCED" THE RESULT.

BYU incorrectly argues, "the moving party must establish that the alleged bias materially affected the outcome or deprived it of a fair hearing" (ECF No. 375, at 10) and "[a]bsent a showing that the alleged partiality actually influenced the result, the motion fails." ECF No. 375, at 11. However, these statements appear to be AI generated hallucinations BYU failed to cite check because Federal and State vacatur laws do not require a showing of prejudice from partiality that "materially affected" or "actually influenced" the outcome. 9 U.S.C.A. § 10; U.C.A. 1953 § 78B-11-124. Further, the first case BYU cites as authority, "*Denver & Rio Grande*, 119 F.3d at 850," does not contain the terms "material," "affect," "actual," "influence", or any derivative terms

anywhere in the document, nor does it discuss "evident partiality" or 9 U.S.C.A. § 10(a)(2). Finally, the second case BYU cites as authority for this "materially affect" proposition, "*Scandinavian Reins. Co. v. Emp'rs Reins. Corp*., 472 F.App'x 806, 812 (10th Cir. 2012)," does not exist. This is not a valid case cite. Even the hyperlink BYU's brief associates with this case cite navigates to a completely irrelevant 9th Circuit opinion regarding review of an immigration appeal, *Dezhong Tian v. Eric H. Holder Jr*.

Thus, BYU's misstatements that the Trust must show prejudice from a "bias that materially affected" or "partiality [that] actually influenced" the result and BYU's case cites appear to be AI generated hallucinations that BYU failed to cite check.

## III. BYU INCORRECTLY STATES A "PROCEDURAL DEFICIENCY OR RESTRICTION" MUST BE SHOWN, CITING THE WRONG CODE SECTION.

BYU incorrectly argues the Trust must identify "a procedural deficiency or restriction on its presentation," citing 9 U.S.C.A. § 10(a)(3). ECF No. 375, at 10. However, the Trust's basis for vacatur is "evident partiality" under 9 U.S.C.A. § 10(a)(2), not "arbitrator misconduct" under 9 U.S.C.A. § 10(a)(3). It appears BYU's AI brief writing engine failed to base its argument on the correct section of the statute.

## IV. BYU EMPLOYEE/ARBITRATORS HAVE MORE DIRECT RELATIONSHIPS THAN THOSE IN CASES GRANTING VACATUR.

BYU argues employment alone does not constitute "evident partiality." ECF No. 375, at 4-5. All three arbitrators, Stephani Plamondon, Paul B. Savage, Ph.D., and Bryan Howell, are current employees of BYU and are therefore financially and professionally connected to BYU, who pays their paychecks, benefits, and retirements. These employer/employee relationships are more direct than those in which courts have granted vacatur. *See, e.g., Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 146, 89 S.Ct. 337, 338, 21 L.Ed.2d 301 (1968) (business relationship between arbitrator and party was "repeated and significant"; the party to the

arbitration was one of the arbitrator's "regular customers"; "the relationship even went so far as to include the rendering of services on the very projects involved in this lawsuit"); *Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 51 F.3d 157, 159 (8th Cir.1995) (arbitrator was a high-ranking officer in a company that had a substantial ongoing business relationship with one of the parties); *Schmitz v. Zilveti,* 20 F.3d 1043, 1044 (9th Cir.1994) (arbitrator's law firm represented parent company of a party for decades, including within two years of the arbitration); *Morelite Const. Corp. (Div. of Morelite Elec. Service, Inc.) v. New York City Dist. Council Carpenters Ben. Funds,* 748 F.2d 79, 81 (2nd Cir. 1984) (arbitrator's father was General President of the union involved in the arbitrated dispute). The BYU employee/arbitrators have more direct relationships with a party (BYU) than any of the arbitrators in these cases wherein "evident partiality" was found. Thus, there was "evident partiality in the arbitrators" in this case. 9 U.S.C.A. § 10; U.C.A. 1953 § 78B-11-124.

## V.    NEITHER DR. ROBERTSON NOR THE REOBERTSON TRUST WAIVED NEUTRALITY.

BYU incorrectly argues the Trust waived any right to arbitrators free of institutional ties by agreeing to the policy, invoking the policy, and participating in the arbitration. ECF. No. 375 at 6. In support, BYU again relies on a hallucinated citation—a statute. BYU asserts that "Utah law expressly authorizes this arrangement: parties may agree that arbitrators 'will not be neutral,'" and cites to Utah Code Ann. § 78B-11-112(4). ECF. No. 375 at 6. First, no subpart (4) of this statute exists. Second, this statute does not use the words "will not be neutral." Third, this statute requires, "An individual who has a known, direct, and material interest in the outcome of the arbitration proceeding or a known, existing, and substantial relationship with a party may not serve as an arbitrator required by an agreement to be neutral." Utah Code Ann. § 78B-11-112(2).

Regarding "agreeing to the policy," in 1992 Dr. Robertson could not have agreed to arbitrate his claim before three BYU employee/arbitrators, because it was not until 2023 that Justice Lee determined the terms "University community" "of the 1992 Policy are best understood as a reference to current faculty, staff, and students." ECF No. 362-1, pg. 4. The Dispute Resolution clause of the 1992 IP Policy merely states, "a three-person panel [is] to be selected from knowledgeable members of the _University community_." ECF No. 301-1, pgs. 5-6 (emphasis added). Dr. Robertson left BYU in 1995 and died in 2014. It was impossible for Dr. Robertson to agree to the "current faculty, staff, and students" definition BYU imposed years later.

Regarding "invoking the policy," by asserting its claim that BYU breached the 1992 IP Policy, the Trust has not agreed to BYU's definition of "University community" as "current faculty, staff, and students." Yes, the Trust claims the 1992 IP Policy is a valid contract. However, BYU's definition of "University community" as "current faculty, staff, and students" is not part of the 1992 IP Policy and was imposed by BYU in 2023. Thus, the Trust has not "invoked" BYU's definition of "University community" as argued.

Regarding "participating in the arbitration," BYU specifically argued, "[a] party cannot knowingly participate in arbitration and then disavow the process after an unfavorable result," and cited _Lewis v. Circuit City Stores, Inc._, 500 F.3d 1140, 1148-49 (10th Cir. 2007). ECF 376, at 7. However, this appears to be an AI generated hallucination because the _Circuit City_ court found waiver only because the litigant failed to lodge any objection before or during the arbitration proceeding. _Id._ at 1148-49. Contrary to BYU's position, the _Circuit City_ court explained there is no waiver if the party objects to an arbitrator.

> The Supreme Court has observed that to the extent parties "forcefully object[ ] to the arbitrators deciding their dispute," they preserve their objection even if they follow through with arbitration. _First Options of Chicago, Inc. v. Kaplan_, 514 U.S. 938, 946, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); _accord Coady v. Ashcraft &_

> *Gerel,* 223 F.3d 1, 9 n. 10 (1st Cir.2000) (finding no waiver when the party "consistently and vigorously maintained its objection to the scope of arbitration"); *China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp.,* 334 F.3d 274, 291–92 (3d Cir.2003) (same).

*Circuit City,* 500 F.3d at 1149-50. The Trust forcefully objected to the BYU employee/arbitrators prior to arbitration.

The Trust objected to BYU's requirement that all arbitrators be selected from "current faculty, staff, and students." Disputes arose concerning: (1) whether arbitration panel members "selected from knowledgeable members of the University community" are limited to *current* BYU faculty, staff, and students; and (2) whether Justice Thomas R. Lee may exclusively promulgate arbitration procedures. ECF No. 362-4, pg. 1; ECF No. 362-3, pg. 2. Over the Trust's objections, Justice Lee determined the terms "University community" "of the 1992 Policy are best understood as a reference to current faculty, staff, and students." ECF No. 362-1, pg. 4. In response, the Trust moved this court to bar enforcement of the dispute resolution clause as unconscionable because BYU unilaterally interpreted its 1992 IP Policy to require only current BYU faculty, staff, and students may be selected for the arbitration panel. ECF No. 362. BYU opposed (ECF No. 363) and this court denied the motion (ECF No. 368), which left the Trust no choice but to proceed in arbitration against BYU before arbitrators selected from BYU's "current faculty, staff, and students." The Trust did not waive its objections to BYU's biased definition of "University community" and to arbitrators who are current BYU employees.

The Trust further objected to BYU's Professor Savage because he is faculty of BYU's Department of Chemistry and Biochemistry and "is a member of the faculty of the Simmons Center for Cancer Research, which may be a circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality." ECF No. 372-5, at 1. BYU renamed the center after Dr. Daniel Simmons, to whom BYU paid the lion's share of the Pfizer settlement funds and who is BYU's primary

witness against the Trust. "The Simmons Center is comprised of over forty-five BYU faculty members from five different colleges who all participate in cancer research and mentor student fellows." ECF No. 372-4, at 2. Professor Savage admitted he is one of the forty-five BYU faculty members comprising the Simmons Center for Cancer Research, wherein he applied in 2014 (ECF No. 372-6) and even today he is listed as a Simmons Center for Cancer Research faculty member. ECF No. 372-7, at 1. At least one of Dr. Savage's students has received funding from the Simmons Center for Cancer Research. ECF No. 372-6. The Trust sought additional information to discover the full extent of Dr. Savage's connection to Dr. Simmons and the Simmons Center for Cancer Research, but BYU refused to produce additional information. ECF No. 372-8. BYU went forward with the arbitration over the Trust's objections to Professor Savage. ECF No. 372-9. The Trust did not waive its objections to BYU's Professor Savage serving as arbitrator.

## VI.  "DISCLOSURE" OF THE PROFESSORS' BYU EMPLOYMENT RELATIONSHIPS DOES NOT PRECLUDE VACATUR.

BYU incorrectly argues "evident partiality targets undisclosed material relationships—not affiliations that were known, disclosed, and contractually required" and cites *Commonwealth Coatings* as authority. ECF No. 375, at 5. BYU also insists a concurrence is "controlling" and represents that Justice White's "controlling concurrence" states that the standard requires a "reasonable impression of partiality." *Id.* However, these statements (and quote) appear to be AI generated hallucinations that BYU failed to cite check. The Federal Arbitration Act does not consider whether the relationships were "disclosed;" *Commonwealth Coatings* says the opposite; and Justice White's concurrence does not use the words "reasonable impression of partiality."

Under the Federal Arbitration Act, "[i]n any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration-- … (2) where there was evident partiality or

corruption in the arbitrators, or either of them." 9 U.S.C.A. § 10. The law makes no mention of "disclosure" precluding vacatur.

Further, the *Commonwealth Coatings* case cited by BYU simply does not say that "evident partiality targets undisclosed material relationships—not affiliations that were known, disclosed, and contractually required," as BYU argues. Quite the opposite. The Supreme Court analyzed the Federal Arbitration Act, 9 U.S.C.A. § 10, and found "these provisions show a desire of Congress to provide not merely for any arbitration but for an impartial one." *Commonwealth Coatings*, 393 U.S. at 147. The Supreme Court cited judicial codes of conduct and rules of the American Arbitration Association, which require judges and arbitrators to disclose any circumstance of bias, or social or business relations or friendships that constitute an element in influencing judicial conduct. *Id*. at 149.

> This rule of arbitration and this canon of judicial ethics rest on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another.

*Id*. at 150. The Supreme Court did not say "evident partiality targets undisclosed material relationships—not affiliations that were known, disclosed, and contractually required."

## VII.    THIS COURT'S ORDER DENYING THE TRUST'S "UNCONSCIONABILITY" MOTION IS NOT LAW-OF-THE-CASE.

BYU incorrectly argues this motion is a "collateral attack . . . barred by law-of-the-case doctrine and principles of finality." ECF No. 375, at 7-8. However, when the Trust moved this court to bar enforcement of the dispute resolution clause as unconscionable, because BYU unilaterally interpreted its 1992 IP Policy to require only current BYU faculty, staff, and students, no arbitrators had yet been identified for the arbitration panel. ECF Nos. 362, 363, and 368. As noted above, the Trust's motion preserves without waiver its objection to BYU's

employee/arbitrators. *See Lewis v. Cir. City Stores*, 500 F.3d at1149-50 (no waiver because of prior objection). Further, the Court's denial of the Trust's "unconscionable clause" motion is not law-of-the-case, because Professor Savage had not yet been identified when the Court issued its order. It was not possible for the Trust to raise its objections to Professor Savage at that time.

BYU again relies on an AI hallucination by citing *Riley* for the proposition: "This collateral attack is barred by law-of-the-case doctrine and principles of finality." ECF No. 375 at 7. However, *Riley* includes no discussion of collateral attack, law-of-the-case, or finality. *See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 784 (10th Cir. 1998). Similarly, BYU cites the *Moses* case for "a strong federal policy favoring arbitration finality." ECF No. 375, at 11. *Moses* stands for an entirely different proposition, that an appeal cannot be had until a lower court decision is final. *See Moses H. Cone Meml. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 11 (1983) (discussing the "final-judgment rule" and its exceptions relating to when an appeal may be taken).

## VIII. IT WAS BYU, NOT THE TRUST, WHO IMPROPERLY REPLACED THE ARBITRATOR POOL WITH "ONE OF ITS OWN DESIGN."

BYU argues the Trust "cannot now ask this Court to replace the contractually specified arbitrator pool with *one of its own design*." ECF No. 375, at 11 (emphasis added). However, that is exactly what BYU improperly did when it determined, via Justice Lee, the terms "University community" "of the 1992 Policy are best understood as a reference to current faculty, staff, and students." ECF No. 362-1, pg. 4. While BYU unilaterally replaced the arbitrator pool with "one of its own design," the Trust asks the Court to follow the law. "[T]he court shall designate and appoint an arbitrator" after striking the arbitrator selection process as unconscionable. 9 U.S.C. § 5; *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1263 (10th Cir. 2018); U.C.A. 1953 § 78B-11-112 (1). The Court must sever and strike the arbitrator panel selection method from the Dispute Resolution clause of the 1992 IP Policy, identify an unbiased pool of arbitrators such as the American

Arbitration Association or JAMS, and order the Dispute Resolution clause to be otherwise enforced.

In support of its argument BYU misquotes the Supreme Court, "*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp*., 559 U.S. 662, 683 (2010) ('Courts have no authority to redesign the agreement struck between the contracting parties.')." ECF No. 375, at 11. However, this misstatement of the law appears to be an AI generated hallucination BYU failed to cite check because the quote does not exist in this reported opinion. The Supreme Court never said what BYU offers as a direct quote. Further, this case is unrelated to the Federal Arbitration Act, 9 U.S.C.A. § 10(a)(2), "evident partiality" issue currently pending, but rather is focused on whether an arbitrator "exceeded his powers" under FFA, 9 U.S.C.A. § 10(a)(4) by compelling parties to submit their dispute to class arbitration when the arbitration clause was silent on class arbitration. Thus, BYU's misquote of the Supreme Court appears to be an AI generated hallucination that BYU failed to cite check.

## IX.    CONCLUSION.

For the reasons noted, the Robertson Trust moves the Court to vacate the final arbitration decision issued on December 12, 2025.

DATED this 17th day of February, 2026.

BY:    /s/ *William Beard*
        R. William Beard, Jr.
        **SLAYDEN GRUBERT BEARD PLLC**

        J. Ryan Mitchell
        **MITCHELL BARLOW & MANSFIELD, P.C.**

        ATTORNEYS FOR THE DONALD L. ROBERTSON TRUST

## **CERTIFICATE OF SERVICE**

I hereby certify that this 17th day of February, 2026, I caused the foregoing document to be filed via the Court's CM/ECF system, which  transmitted notice of such filing to all counsel of record.

BY:     /s/ *William Beard* _____
R. WILLIAM BEARD, JR.
**SLAYDEN GRUBERT BEARD PLLC**